**SYNOD OF the CHESAPEAKE, INC., a religious corporation of the State of Maryland, Plaintiff,**

**v.**

**CITY OF NEWARK, a municipal corporation of the State of Delaware, Defendant.**

Court of Chancery of Delaware.

New Castle.

June 3, 1969.

Ernest S. Wilson, Jr., Wilmington, for plaintiff.

Clyde M. England, Jr., of Killoran & VanBrunt, Wilmington, for defendant.

MARVEL, Vice Chancellor.

Plaintiff, a religious corporation of the State of Maryland, serves as the corporate body of the United Presbyterian Church of the states of Delaware and Maryland. It is the owner, inter alia, of premises at 20 Orchard Road in the City of Newark, title thereto having been acquired in 1957 by its predecessor, Westminster Foundation. According to the complaint, such premises, which are known as the Phoenix Center, were thereafter used until 1963 as a place of worship, as an office for the Presbyterian pastor to students of the University of Delaware, and as a place for a variety of public meetings. In 1963, plaintiff obtained a building permit from defendant which authorized plaintiff to install a private lunchroom in the cellar of its premises. Since September, 1964, such cellar room has allegedly "* * * been used on a weekly basis by plaintiff * * * as a coffee house, serving coffee, soft drinks and light snacks in furtherance of plaintiff's ministry to students at the University of Delaware."

On April 29, 1965, defendant, by written notice, ordered plaintiff to discontinue use and occupancy of the premises at 20 Orchard Road on the ground that such premises were being used and occupied in violation of the Newark City Zoning ordinance and for the further reasons that the building's electrical wiring and sanitary arrangements violated City regulations. Counsel concede that any violations of the latter regulations must first be dealt with administratively and are not to be considered in this opinion. Furthermore, no point is made of the fact that defendant's April 29 notice was apparently not signed by the appropriate city officer.

As of May 5, this Court restrained defendant from carrying out its April 29 order, and this is the Court's opinion on the return of a rule to show cause why a preliminary injunction should not issue in conformity with the terms of the outstanding restraining order.

Section 401 of the Zoning Ordinance of Newark provides that a church may be situated in a Residential "RS" District and it is in such a district that plaintiff's premises, which in the past served as a single family residence, are located. Defendant contends that because plaintiff is not a church in the conventional sense but rather a coffee house and public meeting place that its present use and occupancy constitute a zoning violation. Plaintiff, on the other hand, takes the position that the activities carried on at 20 Orchard Road are entirely appropriate and indeed desirable in a church group which aspires to relate to the realities of religion on a contemporary college campus.

When plaintiff's predecessor developed its plans to purchase 20 Orchard Road in 1957, its real estate agent wrote the Newark City Council to the effect that plaintiff proposed to occupy such premises "* * * as any parish house would be for a church, to hold meetings, religious services and maintain the offices of the organization * * *". It was also stated that it was planned to build a chapel on the premises at a later date, but to date this has not been done. No objection to plaintiff's plans was voiced. Significantly, 20 Orchard Lane is the only building in which Presbyterian re-

ligious services for the students of the University of Delaware are carried on.

According to the affidavits of Robert Andrews, a duly ordained minister of the Presbyterian Church and pastor to students at the University of Delaware, the premises in question have been used for religious services since the property was purchased in 1957. At the present time a Baptist group conducts a prayer service and study of the Bible on Tuesday evenings, while Mr. Andrews celebrates the Presbyterian service of Holy Communion each Wednesday night. He avers that " * * * Some other related activity is conducted on an average of once per week. Weddings and memorial services are occasionally conducted * * *".

Some speakers at the Center have spoken on religious subjects but many have not. So-called underground films have also been shown, some with sexual and anti-war themes. The lunch room or coffee house portion of the building is regularly open on Friday evenings during the academic year of the University of Delaware and is also occasionally open on Saturday evenings. Various brands of coffee and tea are served as well as other non-intoxicating beverages. Bread, cheese, and pastry are also available for purchase at modest prices. A profit is not sought. Musical instruments are in evidence, and at the present time a controversial periodical named "The Heterodoxical Voice" uses space in the premises as a distribution point for its publication. Prior to February, 1969, the building was actually used for the assemblage and publication of material for the paper. These latter activities are no longer carried. The fact that religious services are regularly carried on on the premises is not denied by defendant.

During the past decade the coffee house approach to introducing otherwise apathetic university students to religion has developed rapidly in the Presbyterian, Methodist and Lutheran Churches. Excerpts from various church periodicals evidencing such development are attached to Mr. Andrew's original affidavit. As of May 1966, some two hundred church-sponsored coffee houses were functioning in more than forty states. Such organizations are of three types, one designed for city adults, the second, as here, for the university student, and a third type for teenage children. A formal church atmosphere is avoided in such houses, but, according to the undisputed facts of record, searching inquiry into man's role in a revolutionary world is engaged in, and through discussion of the many problems facing the youth of today in an atmosphere radically different than that of a conventional church the result is often the development in a number of those involved of a faith in the social teachings of Jesus Christ.

Finally, in the case at bar, it is the view of an administrative commission which recently reviewed the activities at the Phoenix Center at plaintiff's request that while plaintiff does not and should not, of course, sponsor "The Heterodoxical Voice", that such publication, because of its connection with 20 Orchard Lane, serves to bring in to plaintiff's center despairing and potentially violent students who would otherwise reject the tenets of Jesus Christ out of hand.

Both plaintiff and defendant have cited cases which are, for the most part, concerned with so-called church-related accessory activities and whether or not such activities are reasonably related to the main church purpose. Thus, defendant relies on the case of Portage Township v. Full Salvation Union, 318 Mich. 693, 29 N.W.2d 297, in which church-sponsored camp meetings led to the creation of an unsanitary and crowded camp site which the court declined to sanction. However, on the present record, I am satisfied that plaintiff's activities do not constitute a similar sort of nuisance. Furthermore, we are not concerned with a "church" which was actually a commercialized healing center, Coe v. City of Dallas (Tex.Civ.App.) 266 S.W.2d 181. On the other hand, present-day courts recognize that any con-

temporary church group, to be worth its salt, must necessarily perform non-religious functions such as using business machines for getting out letters and periodicals in order to reach its members. Accordingly, such activities may not be banned as unrelated to church ritual, Application of Faith For Today, Inc., 20 Misc.2d 634, 194 N.Y.S.2d 708, reversed 11 A.D.2d 718, 204 N.Y.S.2d 751, aff'd 9 N.Y.2d 761, 215 N.Y.S.2d 70, 174 N.E.2d 743, and Corporation of Presiding Bishops, etc., Inc. v. Ashton, 92 Idaho 571, 448 P.2d 185.

■ In the present case, as noted above, there is no denial of the fact that 20 Orchard Lane, Newark is used for Christian religious services, at which, at least in the case of Presbyterian services, a duly ordained clergyman celebrates the service of Holy Communion. This being so, I am satisfied that plaintiff has demonstrated that it is reasonably probable that on final hearing other activities carried on on the premises will be shown to relate in one way or another to plaintiff's attempt to make Christianity meaningful to questioning young persons who will not accept the rigid structure and conventions of traditional Christianity.

Finally, inasmuch as I am satisfied on the basis of the present record that a church exists at 20 Orchard Lane, Newark, there is no need to consider Part 13 of the Zoning ordinance of Newark inasmuch as the requirements there set forth concerning required facilities for offstreet parking do not apply to churches.

On notice, a form of order providing for a preliminary injunction in conformity with the prayers of the complaint may be presented.