Argued July 28, affirmed September 10, 1975

EASTEP, *Petitioner, v.* VETERINARY MEDICAL
EXAMINING BOARD, *Respondent.*

539 P2d 1144

*Harry R. Kraus,* Portland, argued the cause and filed the brief for petitioner.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

Petitioner is a practicing veterinarian in Oregon. He was charged with violation of ORS 686.130(3), which he denied. Following notice and hearing before an examiner, the latter entered findings of fact and conclusions of law holding that petitioner's actions "constituted unprofessional conduct by his misrepresentation of services rendered" in violation of the statute. Upon review the Board concluded those findings were correct, denied his application for renewal of his license to practice, and permanently revoked his right to practice veterinary medicine in this state. He appeals, asserting essentially that the order was not supported by reliable and substantial evidence, that the proper evidentiary standard which should have been applied was that of clear and convincing evidence, and that both the hearing officer and the Board erred in refusing to strike the testimony of the licensed pathologist who performed the autopsy on the animal in question.

The facts found were summarized by the Board as follows:

"1.  That on October 3, 1974, Nancy Hunt was

the owner of a nine months old Gordon Setter dog which she brought to the Animal Clinic of Dr. Eastep, a licensed veterinarian, for treatment.

"2. That the said dog remained at the said Eastep Animal Clinic during the period October 3 through October 9, 1974, and was given treatment by Eastep including surgery.

"3. That during said period Eastep represented to Hunt that the animal had a floating kidney, that he reattached the floating kidney; that the animal had an enlarged kidney which should be removed; that the animal had a hiatus hernia which was repaired, and that a portion of the liver of the animal was removed.

"4. That Hunt paid Eastep the sum of $494.00 for his services.

"5. That on or about the 9th day of October 1974, the dog was taken by the owner to another veterinarian, Dr. Ralph J. Plamondon, and stayed until October 14, 1974. That the animal was given further treatment but that no further surgery was performed.

"6. The animal was returned to Dr. Plamondon on October 16 and died on October 22, 1974. The immediate cause of death was a collapse of the left lung and pericardial effusion.

"7. That at the request of the owner, Dr. Plamondon ordered an autopsy to be performed by Dr. Gene Bogaty, a licensed pathologist. That the dog was delivered to Dr. Bogaty for such autopsy on or about October 22, 1974.

"8. That on said date an autopsy was performed on the said Gordon Setter dog by Dr. Bogaty, a qualified pathologist, who made a gross examination of the anatomy of the dog.

"9. That as a result of said autopsy no sutures or adhesions were discernible.

"10. That Dr. Eastep testified that he ini-

tially had made an exploratory operation and thereafter a second incision and operation upon the said dog during which he removed a two inch piece of bone from the intestines; that he repaired a hiatus hernia which included the moving of the liver and spleen and reattached a kidney, all of which required at least 16-18 sutures in the anatomy of the dog.

"11. That the expert medical and veterinarian witnesses were in accord that sutures and adhesions for such type of operation should be readily apparent from an autopsy taken within ten days or two weeks following the alleged operations described in paragraph 10.

"12. That Dr. Eastep, by reason of the foregoing, did not perform the alleged services of surgery involving the repair of a hiatus hernia or the reattachment of a kidney or removal of an object in the intestine or the moving or removal of a portion of the liver."

■ Examination of the record shows that there was "reliable, probative and substantial evidence" offered to support each of the foregoing findings of fact. It is clear that our review of an administrative agency finding on a question of fact is confined to that question. ORS 183.480(7)(d). It is not for us to weigh the evidence when, as here, there is conflicting evidence. *Balduyck v. Morgan,* 9 Or App 363, 497 P2d 377 (1972).

■ Petitioner next contends that the testimony of Dr. Bogaty should have been stricken because it was insufficiently established that the dog upon which he performed the autopsy was the same animal treated by Dr. Eastep and upon which he performed surgery. We disagree. There was ample evidence[1] to support

[1] There was evidence showing that:

On October 9, 1974, Nancy Hunt took her dog from peti-

the conclusion that the autopsy was in fact performed upon the same animal.

tioner's clinic and brought it to Dr. Plamondon's clinic. Dr. Plamondon treated the dog until October 14, when he discharged the dog to Ms. Hunt's care. Ms. Hunt returned the dog to Dr. Plamondon on October 16, and the dog died at his clinic about 4:30 to 5 p.m. on October 22. Dr. Plamondon then made arrangements to have Dr. Bogaty perform an autopsy on the animal that day.

Dr. Plamondon next placed the dog in a plastic bag, and "sealed [it] with a rubber band." He asked Martin Lindsley, a laboratory technologist who does work for him, to take the dog to Dr. Bogaty. Dr. Plamondon testified that:

"* * * Mr. Lindsley * * * picked the animal up and took it to [Dr. Bogaty]."

Mr. Lindsley testified that he picked up the dog in the "plastic bag * * * sealed with a rubber band" about 6 to 6:15 p.m., and took it to Dr. Bogaty's Portland laboratory. Lindsley arrived there about 6:45 p.m. On that same day one of Dr. Bogaty's employes at his Portland laboratory then brought the dog to him at the Willamette Falls Hospital in Oregon City, where he performed the autopsy.

Dr. Bogaty testified that he was "hazy" about the time his employe delivered the dog to him at the Willamette Falls Hospital, and thought that the delivery was made about 3:30 p.m. However, Dr. Bogaty did testify that he received only one dog for autopsy "that week"; he performed an autopsy on a dog on October 22; and that the dog was received the day Dr. Plamondon said that "it would be there."

Moreover, Dr. Bogaty, who conceded that he was not a dog expert and that he was not "familiar with" the breed known as Gordon Setter, described the dog upon which he performed the autopsy as

"* * * a black dog. [It] appeared to be much like an Irish Setter. * * *"

Ms. Hunt's dog was, in fact, a black Gordon Setter with long mahogany-colored hair ("feathers") on the legs. Ms. Hunt testified that petitioner had told her that the dog was

"* * * the blackest Gordon Setter he had ever seen."

Furthermore, Dr. Bogaty testified that the dog upon which he performed the autopsy died of

"* * * a massive pericardial effusion, and total collapse of the left lung. * * *"

Both petitioner and Dr. Plamondon took x-rays of Ms. Hunt's

Petitioner was charged under ORS 686.130(3), which provides:

> " 'Unprofessional or dishonorable conduct,' as used in this chapter, includes:
>
> "* * * * *
>
> "(3) Misrepresentation of services rendered."

ORS 686.120(1) provides:

> "With the consent of four members, the board may revoke or suspend a permit or license granted to any holder under this chapter for unprofessional or dishonorable conduct."

He contends, if we correctly understand him, that the statute in effect is intended to adopt the standard of proof he says is required to prove common-law fraud—namely, that of clear and convincing evidence. In his brief he frankly concedes he is "unable to find any case law to support our position."

■ Here, however, we do not find it necessary to decide this question. We conclude that there was ample evidence to support the findings of the Board, whether the standard adopted be that of "clear and convincing evidence," as petitioner urges, or that of "reliable, probative and substantial evidence" (ORS 183.480(7) (d)), as urged by respondent.

Affirmed.

---

dog, and those x-rays indicated the "possible" and definite presence of pericardial effusion.

Finally, the dog upon which Dr. Bogaty performed the autopsy had an abdominal incision "identical" to the incision which petitioner described that he made on Ms. Hunt's dog.