Argued May 17, affirmed September 26, reconsideration denied
November 2, 1977, petition for review pending

ANDERSON, *Appellant,*
*v.*
PEDEN et al, *Respondents.*
(No. 18768, CA 7198)
569 P2d 633

[ 1064 ]

Timothy V. Ramis, Portland, argued the cause for appellant. With him on the brief were Mark P. O'Donnell, and O'Donnell, Rhoades & Gerber, Portland.

Paul J. Speck, Chief Civil Deputy District Attorney, Bend, argued the cause for respondents. With him on the brief was Louis L. Selken, District Attorney, Bend.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

By this writ of review proceeding, petitioner challenges repondents' denial of his application for a conditional-use permit to place a mobile home in a single-family residential zone. Petitioner's principal contentions are: (1) his mobile home is an outright permitted use; (2) respondents erred in applying previously unpublished standards to his conditional-use application; (3) respondents' findings are insufficient; and (4) respondents' reasoning is fallacious. We reject each of petitioner's contentions, and affirm the trial court.

Petitioner owns five acres in Deschutes County near Bend. His property is zoned A-1. Single-family dwellings are an outright permitted use in that zone; mobile homes are a conditional use. Petitioner applied for a conditional-use permit to allow him to place a 26' by 64' mobile home on his property.

Following numerous prior hearings, the final negative decision here reviewed was made by the Deschutes County Board of Commissioners following a quasi-judicial public hearing conducted February 7, 1976. At the beginning of that hearing, the commissioners stated they wished to hear evidence on five issues. The Minutes state:

"Chairman Don Grubb began the meeting by stating the nature of the hearing and the rules of procedures as follows: * * *

"*Burden of Proof*

"a. The burden of proof is upon the proponent in proving that the conditional use should be granted. The applicant must address himself to the following questions:

"1) Does it comply with the Comprehensive Plan?

"2) Does it meet with the requirements of the A-1 Zone, including lot size, depth, area and yard requirements?

"3) Will it conserve and stabilize the value of adjacent property?

[ 1065 ]

"4) Is it an encouragement of the most appropriate use of land?

"5) Since the property is located within the Bend Urban Growth Area, will allowance of the conditional use promote orderly and efficient transition from rural to urban use?"

Both petitioner and neighbors who opposed the conditional-use permit he sought presented evidence germane to these factors. Most of the evidence was about valuation. Petitioner presented evidence that his land was assessed at $12,190, and that the purchase price of his mobile home was $29,630. Opponents presented evidence that the appraised value of surrounding homes ranged from $13,085 to $42,885; that one nearby home had recently sold for $35,000—substantially more than the appraised value; and that another nearby home was listed for sale at $58,500—also substantially more than the appraised value.

On April 7, 1976, the county commissioners released findings denying petitioner's conditional-use application, concluding that:

"* * * [T]he applicant has failed to satisfactorily prove that the placement of the mobile home will serve to stabilize the value of adjacent property, that it is an encouragement of the most appropriate use of the land, and that the allowance of the conditional use will promote orderly and efficient transition from rural to urban use."

1. Permitted Use.

In the Deschutes County A-1 zone, where petitioner's property is located, a single-family dwelling is a permitted use; a mobile home is a conditional use. At the times material to this case, the zoning ordinance defined a single-family dwelling as "A detached building containing one dwelling unit and designed for occupancy by one family only," Section 1.030(6); and defined a mobile home as "* * * a vehicle or structure constructed for movement on public highways * * *," Section 1.030(37). Petitioner apparently contends that his potential abode, although constructed for move-

ment on the highways, will become a single-family dwelling once such movement is completed and the structure is attached to a foundation.

■■ Petitioner's contention may find some support in *Clackamas County v. Dunham,* 30 Or App 595, 567 P2d 605 (1977). However, it is impossible for that contention to avail petitioner anything *in this writ of review proceeding.* We are here reviewing denial of a conditional-use permit to place a mobile home where not otherwise permitted. We can reverse only if we conclude *the conditional-use permit* should have been granted. ORS 34.040 and 34.100. Petitioner's permitted-use contention may well mean he was mistaken to apply for a conditional-use permit in the first place. By applying for a conditional-use permit he, in effect, conceded for the purpose of this proceeding that the use he proposed was not a permitted use.

2. Application of Unpublished Standards.

As previously noted, the board of commissioners announced relevant standards before any evidence was received at the hearing that led to its decision here reviewed. Petitioner strenuously contends this "violates procedural due process," arguing, among other things, that:

> "* * * Permitting formulation of standards after the hearing enables the decision-maker to conform the rules to the proof offered by one side and obscure the real reason for its decision."

The problem with this, and several of petitioner's other arguments, is that it has nothing to do with the facts of this case. The county commissioners did not formulate standards "after the hearing"; they announced certain standards at the beginning of the hearing. Rather than join petitioner in a discussion of hypothetical situations, we limit our consideration to whether this procedure was in any way improper.

■■ Petitioner's contention that it was improper seems to have two relevant facets: (1) the timeliness of the commissioners' promulgation of standards; and (2) the

specificity required in standards governing the granting of a conditional use. The timeliness facet need not detain us. *Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977), holds the standards applied by an administrative body "may be stated and refined in the course of the [quasi-judicial] proceedings," 277 Or at 471, so long as the standards are articulated "sufficiently in advance of the final decision so that the applicant and other parties can address the import of the standard," 277 Or at 463. The present record reveals that petitioner was represented by counsel at the hearing before the county commissioners and made no claim of surprise or prejudice when the commissioners announced standards, or motion for a continuance. While the absence of legal representation could produce a different result, *see Green v. City of Eugene,* 22 Or App 231, 538 P2d 368 (1975), we conclude on this record that the standards were timely articulated under the *Marbet* rule.

The specificity problem needs to be put in context. By providing that a given use will only be allowed conditionally in a given zone, a local government finds that there is a possible public need for that use in that zone, and simultaneously finds that introduction of that use into that zone may have disadvantages that outweigh the advantages. *See Kristensen v. City of Eugene,* 24 Or App 131, 544 P2d 591 (1976). While an outright permitted use can be constructed without seeking or obtaining any further discretionary permission from planning or zoning officials, a conditional use cannot be constructed without: (1) applying for a permit, (2) which leads to a quasi-judicial hearing, and (3) the granting of a permit, based upon a discretionary decision by planning officials that the advantages of the specific proposed conditional use outweigh the disadvantages. *Kristensen v. City of Eugene, supra.* The specificity problem focuses on notification of how local government will calculate specific advantages and disadvantages.

In theory, notification would ideally be accom-

plished by spelling out all relevant standards in copious detail in the zoning ordinance. And it may be that passing on a conditional-use application in the total absence of standards would be improper. *Compare Board of Medical Examiners v. Mintz,* 233 Or 441, 378 P2d 945 (1963), *with Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973). But the very nature of a conditional use in land-use planning makes detailed and specific standards impossible. The granting or denial of a conditional use is a highly discretionary act. Important and relevant considerations may vary from one neighborhood to another, and from one year to another. Judged by these considerations, we conclude that the standards applied by the county commissioners in this case were sufficiently specific. *Sun Ray Drive-In Dairy v. OLCC,* 20 Or App 91, 530 P2d 887 (1975); *Palen v. State Bd. Higher Education,* 18 Or App 442, 525 P2d 1047, Sup Ct *review denied* (1974).

3. The Adequacy of the Findings.

The commissioners' findings, to repeat, in part, were:

"CONCLUSION:

"The conditional use permit is *denied* for the reason that the applicant has failed to satisfactorily prove that the placement of the mobile home will serve to stabilize the value of adjacent property, that it is an encouragement of the most appropriate use of the land, and that the allowance of the conditional use will promote orderly and efficient transition from rural to urban use.

"FINDINGS:

"The denial of the conditional use is based upon the following findings:

"The neighborhood in which the applicant proposes to place a mobile home pursuant to a conditional use permit is a contiguous area of established conventionally constructed homes as indicated by opponent's exhibit No. 1, titled 'Eagle's Road Homeowners' Study.' All of the conventionally constructed homes within the neighborhood have significant property value. The quality of

these homes and the proximity lends a special character to the area which promotes high property valuation. Placement of a mobile home within this neighborhood, as indicated by Mr. Milton LaFranchi, a licensed Oregon real estate broker and fee appraiser, would tend to cause economic obsolescence of adjacent properties and consequent depreciation from the upper limits of market value. According to the expert testimony of Mr. LaFranchi, this phenomenon would occur regardless of whether or not the particular mobile home proposed to be placed on the property conformed to the Federal Mobile Home Code. The conclusion of Mr. LaFranchi is supported in part by applicant's exhibit No. 4 which purports to be a mobile home depreciation schedule, setting forth the comparable depreciation rates of mobile homes. It would appear from this table that mobile homes do in fact depreciate rather than appreciate, as is the case with conventionally constructed homes. It would seem reasonable to conclude that a depreciating home would in fact have an adverse effect on adjacent properties.

"Though some arguments have been made by the applicant that the proposed mobile home is in most respects comparable to a conventionally constructed home, in that it complies with the Federal Mobile Home Code, the fact remains that a mobile home is still a mobile home, and does differ in construction quality from a conventionally constructed home. Opponent's exhibit No. 2, which is a comparison study of the Federal Mobile Home Code and the Uniform Building Code (Structural Code), prepared by Jerry Hoard pursuant to the request of Mr. Mark O'Donnell, attorney for the applicant, indicates that, while there is now a great deal of similarity between mobile homes constructed pursuant to the Federal Mobile Home Code and conventionally constructed homes, there nevertheless remain qualitative differences. These qualitative differences result in the distinction between conventionally constructed homes and mobile homes, which differences are apparently reflected in lending institutions' loan policies which provide for a shorter lending period for mobile homes than for conventionally constructed homes. Though the testimony conflicted on the time period over which a lending institution would lend money for purchase of a mobile home, the testimony did indicate that

there would be at least a ten year difference. We think it is proper to infer and conclude from these policies that mobile homes do have a recognized shorter economic life. This same conclusion is again supported by applicant's exhibit No. 4.

"Recognizing therefore that a mobile home does have a shorter economic life, it becomes incumbent upon the applicant for the conditional use to show that this shorter economic life would not in fact adversely affect the valuation of adjacent properties. The applicant in this case has presented no evidence addressing that issue. Had the applicant demonstrated that the particular mobile home was in fact in all respects the equivalent of a conventionally constructed home, he might have carried his burden on this point. This, however, is not the case.

"The testimony presented indicates that the neighborhood has an established character. The character of the neighborhood is established by the high quality of the conventionally constructed homes in conjunction with the topography. The most appropriate use of the land would be a use which is consistent in all respects with the established character of the existing neighborhood. Thus, even though the applicant proposes a single family residential use, the structural aspect of the use, namely, placement of a mobile home rather than construction of a conventionally built home, tends to detract from the established character of the neighborhood.

"The neighborhood is located within close proximity to the new St. Charles Hospital and newly constructed professional buildings. The evidence further indicates that the neighborhood is within the Bend urban area. It is reasonable to conclude therefore that because of the proximity to the hospital and the fact that the neighborhood is within the Bend urban area that the area will ultimately be incorporated within the City of Bend. Because mobile homes are not allowed within the City of Bend outside of mobile home parks, mobile home subdivisions or other designated areas, allowance of this conditional use would likely create an inconsistent future use and thereby effectively interfere with the orderly and efficient transition from rural to urban use."

In past decisions, e.g., *Dickinson v. Bd. of County*

*Comm.,* 21 Or App 98, 533 P2d 1395 (1975), and *Marracci v. City of Scappoose,* 26 Or App 131, 552 P2d 552, Sup Ct *review denied* (1976), this court has held that a lesser standard for adequacy of findings applies to quasi-judicial denials of changes in the legislative land-use plan than to quasi-judicial approvals of changes in the legislative land-use plan. We reasoned that this follows from the fact that the proponent of quasi-judicial change has the burden of proof, *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973); and, therefore, denials based on findings to the effect that a local government was not persuaded by the proponent's evidence are sufficient.

■ Petitioner asks that we reconsider those prior decisions. We see no reason to do so here, because even if we applied the same standards to denials of change as to approvals of change, the commissioners' findings are sufficient.

4. The Commissioners' Reasoning.

In addition to challenging the completeness of the findings, petitioner mounts substantive attacks on each of them.

Petitioner contends that the commissioners' finding of possible adverse impact on established values in the neighborhood is really a subterfuge for "a 'head count' of the neighbors" producing "mob rule in Deschutes County." In support of this sweeping claim, petitioner cites planning commission proceedings involving persons other than himself in which statements were made to the effect that impact on neighborhood valuations is not relevant in passing on mobile home conditional-use applications.

■ Aside from petitioner's choice of pejorative terms, we see nothing improper with a decision on a conditional use being based in part on the feelings of the neighbors who will have to live with that use, if approved. *Fasano* used the term "quasi-judicial" to describe the procedures to be followed by local govern-

ments and the scope of judicial review in a case like this. *Fasano* cannot, however, negate the reality that land-use administration at the local level is fundamentally a political process. The *Fasano* rules open that process to more participation and more overt and reasoned decision-making, but do not abolish its political character. In our system and tradition, political process means democratic process. Just as it is permissible and proper for local governments to consider public sentiment in establishing a legislative land-use plan, it is permissible and proper for local governments to give such public sentiment such consideration as may be relevant under the circumstances in considering quasi-judicial changes in that plan. *Cf. Allison v. Washington County,* 24 Or App 571, 548 P2d 188 (1976).

■ ■ Petitioner contends that the "compatability-with-the-established-neighborhood" standard is unconstitutionally vague. We disagree. By the act of designating mobile homes as a conditional use in a single-family zone, Deschutes County recognized the possible incompatibility between conventionally constructed homes and homes with a shorter economic life. *See Columbia County v. Kelly,* 25 Or App 1, 548 P2d 163, Sup Ct *review denied* (1976). If the standard was sufficient to make the initial legislative distinction, we fail to see why it is not also sufficient when administering and applying the initial legislative distinction.

■ Finally, petitioner attacks the commissioners' reliance on the fact that the subject property is within the Bend Urban Growth Boundary, that the Bend zoning ordinance does not outright allow mobile homes, and conclusion that allowing the conditional use would "interfere with the orderly and efficient transition from rural to urban use." Petitioner argues at length that no law *requires* Deschutes County to consider the impact of its zoning decisions on the City of Bend. This may be. But no law *prohibits* a county

from considering the impact of its zoning decisions on a contiguous city.

Affirmed.