*[513]
 
 RICHARDSON, J.
 

 Petitioner appeals a decision of the Director of the Division of State Lands (Division) denying him a permit, after a hearing, to fill approximately 32 acres of salt marshland of the Siuslaw River Estuary in Lane County. Petitioner makes three assignments of error. First, the denial was not based upon identifiable standards; secondly, the decision was not based upon substantial evidence; and finally, the denial constitutes a condemnation of the land for which petitioner was not compensated. We affirm the ruling of the Division.
 

 The parcel in question is an "immature high salt marsh” containing vegetation which requires regular inundation by tidal waters of the Pacific Ocean. Decaying organic matter in the salt marsh supports the food chain of the estuary.
 
 [1]
 
 This process provides the nutrients to support those organisms which inhabit the estuary, and also salmon and other fish that live a large part of their lives in the open ocean. Salt marshes also serve as spawning grounds for certain species of juvenile fish and provide important functions in flood control and pollution assimilation. In 1973 petitioner filled two small areas of his salt marsh without having sought a permit from the Division. The Lane County Circuit Court in 1976 enjoined him from any further filling of the salt marsh and directed him to remove the fills already made, unless he applied for and received a permit.
 
 [2]
 
 Instead of pursuing this coruse of action, he sought a permit to fill 32 acres of his marshland property in order to construct a recreational complex consisting of a campground, restaurant and marina.
 

 
 *[514]
 
 I
 

 Petitioner contends the Division has not established identifiable standards for determining the best use of land affecting the waters of the state. The Division objects to our consideration of this question since it was not raised at the hearing below. The prior decisions of this court and the Oregon Supreme Court make clear that an appellate court assumes the function of an administrative agency when it nullifies the agency’s determination upon a ground not previously presented, thereby depriving the agency of an opportunity to consider the matter.
 
 Marbet v. Portland Gen. Elect.,
 
 277 Or 447, 561 P2d 154 (1977);
 
 Neeley v. Compensation Department,
 
 246 Or 522, 524-25, 426 P2d 460 (1967);
 
 Stanbery v. Smith et al,
 
 233 Or 24, 32-33, 377 P2d 8 (1962). However, when the subject matter of the particular case is of substantial public importance, as it is here, we will discuss an issue presented for the first time on appeal.
 
 Marbet v. Portland Gen. Elec., supra,
 
 at 456.
 

 The purpose of the State Removal/Fill Law is found in ORS 541.610(1).
 

 ORS 541.610(1) provides:
 

 "The protection, conservation and best use of the water resources of this state are matters of the utmost public concern. Streams, lakes and other bodies of water in this state, including not only water and materials for domestic, agricultural and industrial use but also habitats and spawning areas for game and food fish, avenues for transportation and sites for public recreation, are vital to the economy and well-being of this state and its people. Unregulated removal of material from the beds and banks of the waters of this state may create hazards to the health, safety and welfare of the people of this state. Unregulated filling in the waters of this state may result in interfering with or injuring public navigation, fishery and recreational uses of the waters. In order to provide for the best possible use of the water resources of this state, it is desirable to centralize authority in the Director of the Division of State Lands, and implement
 
 *[515]
 
 control of the removal of material from the beds and banks or filling of the waters of this state.”
 

 Specific standards for allowance or denial of fill applications are set forth in ORS 541.625, which provides:
 

 "(1) The Director of the Division of State Lands shall issue a permit to remove material from the beds or banks of any waters of this state applied for under ORS 541.620 if he determines that the removal described in the application will not be inconsistent with the protection, conservation and best use of the water resources of this state as specified in ORS 541.610.
 

 "(2) The Director of the Division of State Lands may issue a permit applied for under ORS 541.620 for filling waters of this state. In determining whether or not a permit shall be issued, the director shall consider the following:
 

 "(a) Whether the proposed fill unreasonably interferes with the paramount policy of this state to preserve the use of its waters for navigation, fishing and public recreation;
 

 "(b) Whether the proposed fill conforms to sound policies of conservation and would not interfere with public health and safety;
 

 "(c) Whether the proposed fill is in conformance with existing public uses of the waters; and
 

 "(d) Whether the proposed fill is consistent with a duly enacted zoning or land use plan for the area where the proposed fill is to take place.
 

 * * * * »
 

 ORS 541.610(1) and 541.625 together with the Division’s rules provide workable standards for the Division in reviewing applications for permits to fill waters of this state.
 
 [3]
 
 The term "best use” in ORS 541.610 is not an unknown term in the law.
 
 See, Highway Comm. v. Superbilt Mfg. Co.,
 
 204 Or 393, 412, 281 P2d 707 (1955). The broad policy statement of
 
 *[516]
 
 ORS 541.610(1) is accompanied by specific criteria in ORS 541.625 to insure fairness and uniformity in the administrative decisions of the Division. Petitioner’s reliance on
 
 Sun Ray Dairy v. OLCC,
 
 16 Or App 63, 517 P2d 289 (1973), is misplaced. In
 
 Sun Ray we
 
 found the denial of a liquor license impossible to review for substantial evidence because the issues were unascertainable and we could not determine the standards against which the evidence was to be measured under ORS 471.295, which provides:
 

 "The commission may refuse to license any applicant if it has reasonable ground to believe any of the following to be true:
 

 "(1) That there are sufficient licensed premises in the locality set out in the application, or that the granting of a license in the locality set out in the application is not demanded by public interest or convenience.
 

 «ifs ifc sfc if: # w
 

 We noted in
 
 Sun Ray
 
 that the generalness of the statutory language in ORS 471.295(1) could only be cured by the promulgation of standards by the Liquor Control Commission.
 

 "The legislature has not answered these questions by statute. ORS ch 471 dealing with the issuance of liquor licenses does not purport to articulate the circumstances under which a license must be granted. Rather, ORS 471.295 is phrased in the negative, providing that the commission may refuse to license any applicant if it has reasonable ground to believe any of a number of specific or general conditions exist. * * *” 16 Or App at 69.
 

 ORS 541.610(1) and 541.625 are not subject to the same characterization. The degree of specificity required of a statute depends to a large extent on the subject matter of the provision.
 
 See, Board of Medical Examiners v. Mintz,
 
 233 Or 441, 378 P2d 945 (1963). The statutes provide sufficient guidance for us to undertake meaningful review of the Division’s ruling.
 

 In addition the notice to petitioner that his permit had been denied included a letter setting forth the
 
 *[517]
 
 basis of the denial.
 
 [4]
 
 The letter indicated the Division’s determination that the value of petitioner’s salt marsh in its natural state outweighed the value to the public that might result from its conversion to a campground with restaurant and marina. Petitioner was apprised by this letter of the standards utilized by the Division in denying the permit. These are the same standards embodied in the statute. He was therefore aware in detail of the contentions he would have to meet at the hearing.
 

 
 *[518]
 
 n
 

 The denial of petitioner’s application for a fill permit was based upon substantial evidence. The ultimate findings of fact of the Director of the Division were based on evidence presented at the hearing including evidence incorporated into the hearing record from the transcript of the circuit court proceeding. The findings indicate the proposed project would have completely destroyed, by dredge and fill alteration, some 32 acres of intertidal, salt marshlands of the North Fork Siuslaw. The Division found it was not consistent with sound conservation policies since both the state and federal governments support the protection of fragile marshland. Petitioner’s plan is also at variance with present public uses of the resource which entail little development.
 

 Petitioner contends the hearing testimony established that his application was denied simply because salt marshes are valuable to the estuary system and not because of any determination as to the best use of his land. It was petitioner’s responsibility to present evidence supporting his proposed project as being in conformance with the Removal/Fill Law under ORS 541.610(1) and 541.625. Several witnesses presented evidence contrary to his contention, urging the retention of the 32 acre parcel in its present unimproved state. We review only for substantial evidence. ORS 183.482. Where the evidence before an agency is such that reasonable persons may fairly differ as to whether it establishes a fact in issue, there is substantial evidence to support the decision.
 
 Dietz v. Smith,
 
 28 Or App 871, 561 P2d 1032 (1977);
 
 Eastep v. Vet. Med. Exam. Bd.,
 
 22 Or App 457, 539 P2d 1144 (1975). Our review ends there. There is substantial evidence in the record to support the Division’s conclusion that the public interest in the best use of its water resources was better served by retaining petitioner’s salt marsh in its present unimproved state.
 

 
 *[519]
 
 m
 

 Petitioner’s final contention is that the denial of his application for fill permit is an inverse condemnation of his land for which he should be compensated. He cited ORS 541.610(2) as the basis of this contention. That section provides:
 

 "There shall be no condemnation, inverse condemnation, other taking, or confiscating of property under ORS 541.605 to 541.665 without due process of law.”
 

 This section does not confer authority or jurisdiction upon the Director of the Division of State Lands to determine the legal issue of whether denial of a permit is a condemnation and, if so, award damages. The issue of inverse condemnation is not cognizable in this proceeding and will have to be raised in some other proceedings.
 
 See Scott v. State Highway Commission,
 
 23 Or App 99, 541 P2d 516 (1975).
 

 Affirmed.
 

 [1]
 

 At the hearing before the Division an estuary was described as a place where fresh river water meets and mixes with saline ocean water.
 

 [2]
 

 The entire transcript and all exhibits from the circuit court injunction proceeding were received into evidence at the Division hearing by stipulation of the parties to eliminate duplication of testimony. However, it should be noted that the subject of that suit was the two small fills, not the 32 acre development petitioner subsequently proposed to the Division.
 

 [3]
 

 Rules for Issuance and Enforcement of Removal and Fill Permits, Oregon Administrative Rules, ch 141 § 85-100 et seq. and
 
 see also,
 
 Summary Final Report 1975, Oregon Coastal Conservation & Development Commission, for its recommendations regarding state estuaries.
 

 [4]
 

 The letter reads in part:
 

 "Your application is denied for the following reasons:
 

 "1. The proposed project would involve approximately 32 acres of salt marsh situated in the North Fork Siuslaw River.
 

 "2. The North Fork Siuslaw River, at the proposed fill site, is a part of the Siuslaw River Estuary.
 

 "3. The salt marsh lands at the proposed fill site are a part of the waters of this state.
 

 "4.
 
 The proposed project would unreasonably interfere with the paramount policy of this state to preserve the use of its waters for navigation, fishing (fishery), and public recreation
 
 in that the project would completely destroy the ecological and aesthetic values and biological productivity of what is now a highly productive aquatic habitat. The State Removal-Fill Law (ORS 541.605 et seq) was enacted to preserve and conserve such areas from total destruction by filling and dredging, although other uses of the land which would not require destruction of the resource value of the land by dredge or fill are acceptable under the statute.
 

 "5.
 
 The proposal does not conform to sound policies of conservation
 
 in that it is both state and national policy to preserve and conserve salt marsh lands in as natural a state as possible because of their huge contributions of nutrients into estuarine systems and their important role as habitat for many species of aquatic plants, birds, and wild life.
 

 "6.
 
 The proposed project would not be in conformance with existing public uses of the waters
 
 in that the salt marsh lands of the North Fork Siuslaw River are now chiefly used as a natural resource area. There has, to date, been very little alternation of the area through filling and development.
 

 "7.
 
 The proposed project is not consistent with the tenets of the Lane County comprehensive planning process now underway in this area.
 
 The Division recognizes that no comprehensive plan or zoning program has been 'duly enacted’ in this area as yet, but considerable thought on the matter has occurred as is evidenced by the publication,
 
 Siuslaw Estuary Land Use Plan Recommendations,
 
 December 1974, prepared under the auspices of the Oregon Coastal Conservation and Development Commission.” (Emphasis added.)