Argued August 23, 1977, affirmed January 16, reconsideration denied February 23, petition for review denied July 18, 1978

# DAMASCUS COMMUNITY CHURCH, *Appellant,*

*v.*

# CLACKAMAS COUNTY BOARD OF COMMISSIONERS, *Respondents.*

## (No. 96891, CA 7349)

573 P2d 726

William B. Ball, Harrisburg, Pennsylvania, argued the cause for appellant. With him on the briefs were B. Rupert Koblegarde and Grethe A. Larson, Portland.

Keith Kinsman, Assistant County Counsel, Oregon City, argued the cause and filed the brief for respondents.

Gregory R. Mowe, American Civil Liberties Union of Oregon, Portland, filed a brief amicus curiae for Damascus Community Church.

Before Schwab, Chief Judge, and Richardson and Johnson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

This is a writ of review proceeding wherein petitioner contests the denial of a conditional use permit to operate a parochial school. Petitioner presently has a church on a six-acre site in a rural residential area of Clackamas County. A conditional use permit to operate a church was issued by the county in 1967. Since 1966, the church has also been operating a kindergarten and school for children in grades 1 through 12. The school is conducted in existing church facilities and presently has an enrollment of 102 students with five full-time faculty. In 1975, the Clackamas County Planning Department advised petitioner that its conditional use permit pertained only to the operation of a church. Petitioner then applied for the subject conditional use permit. The application contemplated continued use of the existing church facilities for the school with an eventual enrollment of 250 students and a faculty of 12.

The Clackamas County zoning ordinance provides in pertinent part:

"A . . . . . The following conditional uses, because of their public convenience and necessity and their effect upon the neighborhood shall be permitted only upon the approval of the Planning Commission after due notice and public hearing * * * and a *finding that such conditional uses will not be detrimental to the general comprehensive plan and surrounding property.*
"* * * * *

"8.4 CHURCHES.
"* * * * *

"8.8 SCHOOLS: PAROCHIAL AND PRIVATE.
"A.....District Permitted: Agricultural, Residential, and Multi-Family Districts.
"B.....Dimensional Standards:
"1.....Minimum land area: Twenty thousand (20,000) square feet.
"2.....Front yard setback, twenty-five (25) feet; Rear yard setback, twenty (20) feet; Side yard setback, twenty (20) feet.

[ 5 ]

"C.....Off-Street Parking: As required in Section 7.1.
"D.....Off-Street Loading and Unloading Area for Buses: As required in Section 7.2." (Emphasis supplied.)

Petitioner's application satisfied the specific requirements of paragraph 8.8. The Clackamas County Planning Commission denied the permit application. The Clackamas County Board of Commissioners affirmed the denial after conducting a public hearing, and made the following findings:

"1. The proposed use of the subject property as a school for pre-school, kindergarten and grades one through twelve, with an ultimate enrollment of 250 students, is in conflict with the Clackamas County Comprehensive Plan in that said Plan would require a minimum of 12½ usable acres for such a school.

"2. Applicant has failed to carry his burden of proving that the proposed use will not adversely affect the surrounding neighborhood, particularly with respect to traffic, noise and sewage disposal problems."

A petition for writ of review of the Clackamas County Board of Commissioners' denial was filed in circuit court. The court affirmed the denial of petitioner's conditional use permit. Petitioner appeals.

The petition for writ of review contended that

"* * * [1] the finding by the Board of Commissioners was based upon an improper construction of the applicable law; this error was in construing the word 'Schools,' as used in the Comprehensive Plan * * * to include private as well as public schools, and [(2)] specifically that the Plaintiff's application for use of church facilities for a school which is an integral part of the church and not a separate entity falls within the requirements therein stated."

We cannot reach, in this appeal, petitioner's second contention that its proposed school is an integral part of church facilities and thus is covered by the original conditional use permit issued to the church in 1967. By applying for a conditional use permit for its school, the petitioner in effect concedes that, for the purpose of

[ 6 ]

this proceeding, its proposed use was not permitted by the original permit. *See Anderson v. Peden,* 30 Or App 1063, 1067, 569 P2d 633 (1971).[1] However, petitioner's contention regarding the comprehensive plan can be reached.

The only provisions in the Clackamas County Comprehensive Plan dealing with the subject of schools provide:

"The County's population has a direct effect upon school enrollment. At present, most schools in Clackamas County are keeping pace with the demand. There are a few situations where there is adequate space for enrollment expansion, but there are many more in which the reserve capacity in the schools is expended, leaving no room for expansion without new buildings.

"In allocating land area for new school facilities, the Oregon State Board of Education has adopted general standards:

"Elementary School—any combination of grades one through eight. Five usable acres plus one usable acre for each 100 children, or fraction thereof, of ultimate building capacity.

"Junior High or High School—any combination of grades seven through twelve. Ten usable acres plus one usable acre for each 100 children, or fraction thereof, of ultimate building capacity.

"GOALS

"To insure adequate school sites for an expanding population.

"GENERAL POLICIES

"A school site task force should be appointed by the governing body to develop a school site study for future planning. This group should be composed of:

---

[1] Our holding here does not prevent the church from contending, in an appropriate legal proceeding, that the school it seeks to operate falls within the purview of the original conditional use permit. Courts in several jurisdictions have broadly construed the definition of the word "church" as applied to zoning ordinances. *See Synod of Chesapeake, Inc. v. City of Newark,* 254 A2d 611 (Del Ch 1969); *Corporation of Presiding Bishop, Inc. v. Ashton,* 92 Ida 571, 448 P2d 185 (1968); Annotation, 62 ALR3d 197, 206-12 (1975); Comment, *Judicial Definition of Religious Use in Zoning Cases,* 1973 Urban L Ann 291 (1973).

"A member of the School Board from each school district (or a selected citizen representative).

"A member of the School Administration from each district.

"Advisory to the group shall be:

"A member of the Planning Commission.

"Personnel from the Planning Staff as determined by the director.

"The task force should be led and coordinated by a staff member from the I.E.D. This group will serve as an avenue for exchange of information and ideas between the school districts and will contribute to coordinated planning of schools on a county-wide basis. It should also promote communication between the schools and the Planning Department to provide mutual assistance in directing the patterns of school growth.

"School sites should be located and purchased in advance of needs to obtain sites at minimum cost to the taxpayers.

"To encourage the location of schools in the urban area within walking distance for students, the maximum service area radius should be: Elementary school, one-half mile; Junior high, one mile; Senior high, one and one-half miles.

"An elementary school's service area should not be bisected by a major arterial street to reduce traffic hazards to small children.

"Junior and senior high schools should be located on, or near, an arterial street.

"Schools should be encouraged to use their facilities for multiple use, particularly in summer recreation programs.

"In large residential developments, school sites shall be dedicated and donated to the school districts. For smaller developments, an equitable financial contribution shall be made to the school district in proportion to the impact of the development on the school enrollment."

The county interprets the above-quoted provision as requiring a 12½-acre site for private parochial schools with a projected enrollment of 250 students. In *Bienz*

*v. City of Dayton,* 29 Or App 761, 566 P2d 904, *rev den* (1977), we held that where there is an ambiguity in a municipal ordinance, we defer to the municipality's interpretation if that interpretation is not contrary to the expressed terms of the ordinance. 29 Or App at 777. Here there is no ambiguity. Although the comprehensive plan speaks of "schools," it is apparent that the reference is to public schools only. The purpose of the plan provision is to prescribe a method for selecting sites for new public schools to meet expanding population needs by establishing a school-site task force. The task force consists of representatives of the Planning Commission, public school districts and the Intermediate Education District. Sites are to be purchased in advance of needs to minimize "the cost to taxpayers." In large residential developments, sites are to be dedicated "to the school district." In other developments there is to be an equitable contribution to the "school district." These provisions clearly have no relation to private schools. The undisputed testimony at the hearing was that the acreage standards set by the State Board of Education and referred to in the Comprehensive Plan apply only to public schools.

■■ The county relies on *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975), in which the court held that where there is a conflict between a comprehensive plan and a zoning ordinance the plan prevails. Here, there is no conflict. The plan is silent on the subject of private schools. Where there is no conflict between the plan and a zoning ordinance, the ordinance governs. The proposed conditional use complies with the dimensional and other specific requirements relating to private and parochial schools set forth in the ordinance.

The County Board of Commissioners' conclusion in Factual Finding No. 1 that the proposed school is in conflict with the Comprehensive Plan is erroneous.

The petition for writ of review also contends that the Board of Commissioners

[ 9 ]

"* * * did not have reliable, probative and substantial evidence to support their finding that the applicant failed to carry the burden of proving that the proposed use will not adversely affect the surrounding neighborhood."

At the hearing conducted by the Board, the evidence on issues other than compliance with the comprehensive plan concerned sewage disposal, traffic and noise. The petitioner first presented evidence regarding the effect that the proposed school would have on sewage disposal in the neighborhood. A number of neighborhood residents referred favorably to a report prepared by a soil scientist hired by the petitioner. The report stated that the church was currently operating at 48 percent of the capacity of its septic drainfield. One resident stated that the soil scientist had testified before the Clackamas County Planning Commission that the sewer system would not be detrimental to the community.

The evidence presented by the opponents of the conditional use permit regarding sewage disposal consisted of the testimony of several residents that there were a number of lots in the area of the church that were "dead lots" which had been denied septic tank permits and that many residents of the neighborhood were having problems with their septic tanks. In addition, one resident testified that the soil scientist who had written the sewage report for the petitioner had approved the septic tanks which were now the subject of complaints by neighborhood residents.

Next, the petitioner presented evidence regarding the effect that the proposed school would have on traffic in the neighborhood. One resident stated that a member of the county public works department testified before the Clackamas County Planning Commission that there is currently no traffic problem created by the school's operation and none could be anticipated even with a doubling of the present traffic. Another resident stated that the traffic created by the school was light. The petitioner also introduced into

evidence letters from neighborhood residents who could not attend the hearing who stated that traffic in the area of the church was heavier on Sunday than during the school week, and that the only traffic problem in the neighborhood was created by unsafe drivers.

The opponents' evidence in this area consisted of the testimony of two residents. One stated that a majority of the people who abutted the church property were opposed to the conditional use permit because of the increased traffic that would be produced by the school. Another resident stated that she often saw cars leaving the church being driven unsafely and that she had noticed a drastic reduction in traffic during the school's spring vacation.

Finally, the petitioner presented evidence regarding the effect that the proposed school would have on noise in the neighborhood. Two persons testified that the noise produced by the children currently at the school did not disturb them. In addition, one letter, written by two residents of the church neighborhood, introduced into evidence by the petitioner, stated that they were never bothered by the noise.

The opponents' evidence here consisted of the testimony of three neighborhood residents. They stated that their spouses worked at night and slept in the afternoon and were bothered by the noise of school children playing in the schoolyard.

■ We stated in *Saxon v. Div. of State Lands,* 31 Or App 511, 570 P2d 1197 (1977), that

> "* * * [w]here the evidence before an agency is such that reasonable persons may fairly differ as to whether it establishes a fact in issue, there is substantial evidence to support the decision * * *." 31 Or App at 518, citing *Dietz v. Smith,* 28 Or App 871, 561 P2d 1032 (1977); *Eastep v. Vet. Med. Exam. Bd.,* 22 Or App 457, 539 P2d 1144 (1975).

The sufficiency of the evidence on noise and traffic as distinguished from pollution is questionable. However, we need not reach that issue here because the petitioners, as their petition in effect concedes, had the burden of proof. *See Anderson v. Peden, supra; Marracci v. City of Scappoose,* 26 Or App 131, 135, 552 P2d 552, *rev den* (1976); *Dickinson v. Bd. of County Comm.,* 21 Or App 98, 102, 533 P2d 1395 (1975).

■ Petitioner does not challenge the adequacy of the factual findings made by the Board. We note, however, that under the provisions of ORS 215.416(6) and (7) in Oregon Laws 1977, ch 654, § 2, p 15, which was not in effect at the time of the Board's decision here, the order would have been inadequate. That statute provides:

"(6) Approval or denial of a permit application shall be based on standards and criteria which shall be set forth in the zoning ordinance or other appropriate ordinance or regulation of the county and which shall relate approval or denial of a permit application to the zoning ordinance and comprehensive plan for the area in which the proposed use of land would occur and to the zoning ordinance and comprehensive plan for the county as a whole.

"(7) Approval or denial of a permit shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth."

If the petitioner elects to again apply for a conditional use permit for the operation of a school, the Board's order, whether it grants or denies the request, will need to be far more specific than the order at issue here.

■ Petitioner and amicus curiae argue in their briefs that the Board's denial of the conditional use permit deprived members of the church their constitutional right of free exercise of religion. The petition for writ of review, reproduced in pertinent part above, does not

raise this issue. In a writ of review proceeding, a court cannot consider any errors except those disclosed by the petition, *Kinney v. City of Astoria,* 58 Or 186, 189, 113 P 21 (1911); *Fisher v. Union County,* 43 Or 223, 233, 72 P 797 (1903); *School District v. Irwin,* 34 Or 431, 437-38, 56 P 413 (1899). Consequently, we do not consider the constitutional issue.[2]

The Board's denial of a conditional use permit to the church must stand.

*Affirmed.*

**JOHNSON, J.,** dissenting.

This case should be remanded. The Clackamas County Board of Commissioners' findings concerning sewage, traffic and noise are wholly inadequate and are not supported by substantial evidence.

The majority concedes that the findings are inadequate, but declines to reverse because there was no assignment of error challenging the adequacy of the findings. The problem with this rationale is that there is nothing in the record from which we can discern for purposes of judicial review what the Board's reasons were for concluding that petitioner "failed to carry his burden of proving that the proposed use will not adversely affect the surrounding neighborhood, particularly with respect to traffic, noise and sewage disposal problems." It may be that the Board was not persuaded by the evidence offered by petitioner, but there is nothing in the record to indicate that this was so or why. The only explanation offered by the county on appeal is that it relied on the "reliable, probative and substantial evidence" offered by the opponents

---

[2] A constitutional issue may be considered for the first time on appeal if there are compelling reasons to do so. *See State ex rel Juv. Dept. v. Patton,* 5 Or App 450, 453, 485 P2d 653 (1971); *City of Portland v. Trumbull Asphalt,* 2 Or App 1, 5, 463 P2d 606, *rev den* (1970). We do not find any such compelling reasons in this case, especially in light of our decision in *Christian Retreat Center v. Comm. for Wash. Co.,* 28 Or App 673, 560 P2d 1100, *rev den* (1977).

concerning the traffic, noise and sewage disposal. As the majority concedes, the opponents' evidence with respect to traffic and noise was not substantial and for that reason alone the case should be remanded.[1]

The majority does not state whether or not there was substantial evidence of adverse impact caused by sewage disposal. It is questionable whether the evidence offered by opponents was substantial, since opponents' evidence consisted solely of the testimony of lay persons who had no personal knowledge of the petitioner's property or drain field. The evidence offered by petitioner was substantial, particularly the report of the soil scientist. But, even if the opponents' evidence would qualify as substantial evidence, such evidence is not sufficient to support the Board's ultimate finding of "adverse effect on the surrounding property." The Board's finding of adverse effect on the

---

[1]The majority's description of the evidence offered by proponents and opponents is incomplete. With respect to traffic, in addition to the evidence summarized in the majority's opinion, petitioner presented detailed testimony that the school presently requires 30 cars a day to transport 102 students plus five cars for staff and that this is far less than is required for normal church activities. With respect to noise, petitioner presented testimony showing the rural and sparsely populated nature of the neighborhood, the location of play fields with respect to nearby residences, and the testimony of immediate neighbors concerning the effect upon them. Considering the abstract nature of that which had to be proved, i.e. impact on noise and traffic, and that petitioner in effect had the burden of proving a negative, I would hold that proponents' evidence was substantial. By similar reasoning, I would hold that proponents' evidence concerning noise was substantial. However, the only evidence offered by proponents concerning traffic related in great part to times when school is not in session and was not substantial evidence. The one witness for the opponents on the traffic issue stated:

"I would like to talk about traffic and the noise. * * * I see the traffic every day. The traffic starts about 8:30 in the morning and seems to continue until *late at night.* They have activities in the buildings *seven days* a week. There is only one access road to the church and that's Rust Way, that is our only access road to our neighborhood and to our homes. More often than not the cars coming from the church parking lot do not stop before entering Rust Way. I have seen cars traveling down Rust Way having to stop to allow a car to come from the parking lot. I worry about the safety of my two children. If they would want to ride a bicycle up to visit a friend I feel like I always need to walk them up the street because I am afraid they will be hit by a car." (Emphasis supplied.)

surrounding property was stated in the conjunctive with respect to "traffic, noise and sewage disposal problems." There was not substantial evidence of adverse impact caused by traffic. Thus, one of the legs of the three-legged stool of the Board's findings has failed. There is no indication in the record that the Board would have denied the conditional use permit on grounds of sewage disposal problems alone.

It should also be noted that the written findings concerning noise, traffic and sewage were added as an afterthought. The record indicates that the controlling consideration motivating the county's decision was its erroneous conclusion that the proposed use was contrary to the comprehensive plan. At the conclusion of the hearing the Board of County Commissioners voted two to one to deny the permit, Commissioner Telford dissenting. In voting for the permit, Commissioner Schumacher stated his reasons:

"Ladies and Gentlemen, I think Counsel would agree that the burning issue in this matter is whether or not this application fits within the Comprehensive Plan because a conditional use must both fit the Comprehensive Plan and not be detrimental to the surrounding properties.

"* * * * *

"* * * [T]he application must stand or fall, obviously, on whether or not it falls within the Comprehensive Plan and in my judgment it does not.

"So, Mr. Chairman, I really have no choice other than to move that the appeal of a conditional use by the Damascus Community Church be denied on the basis that the conditional use does not conform to the Clackamas County Comprehensive Plan."

Commissioner Skoko stated his reasons:

"My main concern is that we are compelled to abide by the Comprehensive Plan and checking in between breaks, it is my feeling that the zoning prevails here in accordance with the Plan and as a result I cannot go in any other direction except to so comply and I also do feel it's a violation of zoning which at a later time would be a

violation of the Comprehensive Plan if the request was granted."

It is thus not at all clear whether the county would have ever denied the conditional use permit on the grounds of noise, traffic and sewage problems alone. The conflict between the written order and the statements of the reasons given at the time of the decision should be resolved.