Argued January 19, reversed and
remanded April 2, 1979

MILLER, et al, *Appellants,*
*v.*
THE COUNCIL OF THE CITY OF
GRANTS PASS, et al, *Respondents.*
(No. 77-1251-E, CA 11244)
592 P2d 1088

Walter L. Cauble, Grants Pass, argued the cause for appellant. With him on the briefs was Schultz, Salisbury, Cauble & Snider, Grants Pass.

Philip L. Nelson, City Attorney, Grants Pass, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, Tanzer, Richardson and Roberts, Judges.

ROBERTS, J.

**ROBERTS, J.**

Petitioners appeal from an order of the trial court affirming the city council's denial of petitioners' application for a conditional use permit. We reverse and remand.

Petitioners own a piece of land slightly larger than an acre in an area of Grants Pass zoned R-1-6, single-family residential. Single-family dwellings are permitted uses in this zone, while dwelling groups[1] and duplexes are conditional uses. Petitioners applied for a conditional use permit to construct a dwelling group consisting of four duplexes. The city hearings officer held a public hearing and granted the permit subject to certain conditions. A neighboring homeowner appealed the decision to the city council which, after considering the findings and decision of the hearings officer and holding another public hearing, reversed the decision of the hearings officer and denied the permit. On writ of review, the trial court affirmed the city council's decision.

Petitioners contend that the city council did not follow procedural requirements in its review of the hearings officer's decision; that the council improperly applied the city's zoning ordinance and general plan; and that its decision was not supported by substantial evidence on the record.

Citing ORS 227.180(1) and Section 16 of the City of Grants Pass Land Use Hearing Rules, petitioners first contend that the council's review was procedurally incorrect because it failed to consider the record of the proceedings before the hearings officer.

ORS 227.180(1) provides:

"(1) A party aggrieved by the action of a hearings officer may appeal the action to the planning commis-

---

[1] Dwelling Group is defined as follows by the Grants Pass zoning ordinance:

"*Dwelling Group* shall mean a group of three (3) or more dwellings attached or detached located on a parcel of land in one ownership and having any yard or court in common."

sion or council of the city, or both, however the council prescribes. The appellate authority on its own motion may review the action. The procedure for such an appeal or review shall be prescribed by the council, but shall include a hearing at least for argument. *Upon appeal or review the appellate authority shall consider the record of the hearings officer's action. That record need not set forth evidence verbatim."* (Emphasis supplied.)

Section 16 of the Grants Pass Land Use Hearing Rules provides:

> *"Section 16. Appeals and Hearings.*
>
> "(1) Appeal is allowed, as provided by ordinance, from any decision of the Planning Commission or hearing officer to the Common Council. Unless otherwise provided by ordinance or state law, such appeal before the City Council shall be *de novo,* and the parties thereto shall be permitted to present oral or written arguments as to all matters within the record and new matters and evidence shall be allowed upon appeal.
>
> "(2) Appeals shall be governed by these rules and the City Council shall base its decision upon substantial, reliable and probative evidence *as supported by the record of the tribunal appealed from* and any additional testimony or other evidence received by it during the appeal proceeding. The City Council shall make findings as required herein and shall comply with these rules." (Emphasis supplied.)

The proceeding before the hearings officer was tape- recorded but not transcribed. At the time of its de novo review, the council did not listen to the tape-recording, but each council member was provided with a copy of the hearings officer's findings and decision and the same were read before the council. Petitioners contend that because it did not listen to the tape recording, the council violated the above-quoted provisions. We disagree.

The hearings officer made extensive findings which included specifications about the subject property, a detailed summary of the applicants' presentation

[592]

along with additional facts from their original application, and a summary of statements by proponents and opponents.

ORS 227.180(1) states that the record considered "need not set forth evidence verbatim." Under these circumstances, where the findings included a clear and detailed summary of the evidence before the hearings officer and where the council also conducted a hearing pursuant to its rules, we hold that the council satisfied the statutory requirements.

Petitioners further contend that the council improperly construed the city's general plan and zoning ordinance in its findings of fact. A general plan for the urbanizing area of Josephine County and the City of Grants Pass was adopted by the county and city in 1969 and implemented by a city zoning ordinance in 1972. The council found the petitioners' proposed use of their land to be "inconsistent with the General Plan" and particularized its reasons for this conclusion, citing testimony from the public hearing before the council and various specific provisions from the general plan.

Petitioners argue that the council misconstrued the general plan in two respects, Both of the alleged misconstructions involve the following language from the general plan:

> "*Urban medium residential* densities account for the largest area recommended for urban residential development. It includes most of the single family areas of the city and of the Fruitdale-Harbeck district of the county. It is also the housing density recommended as a development alternative in those sections of the planning area which may be provided with community services in the future. Urban medium residential areas are intended to accommodate housing developments at *an average of about 3 to 6 dwelling units per acre on lots ranging in size from 5,000 to 12,000 square feet. In some sections, such as southwest Grants Pass, this housing density will be exceeded in places by construction of duplexes*

[593]

on *scattered individual lots.* However, it is anticipated that the vast majority of housing types within this classification will be single family dwellings as is the case at the present time." (Emphasis supplied.)

■■ Petitioners first take issue with the following finding:

"The Council finds * * * that the intent of the General Plan is to have duplexes on scattered individual lots, not congregated in units of four duplexes such as is the case with the proposed development. * * *"

Petitioners interpret the "scattered individual lots" language of the General Plan as applying only to property in the southwest part of the city. It appears from the phrase "such as southwest Grants Pass" that this area of the city is used by way of illustration, but is not named exclusively. While it is not clear that the language is intended to mean that duplexes can only be built on individual lots, we have said that we will defer to a council's reasonable interpretation of its own comprehensive plan. *Heilman v. City of Roseburg*, 39 Or App 71, 591 P2d 390 (1979); *Damascus Comm. Church v. Clackamas Co.*, 32 Or App 3, 573 P2d 726, *rev den* (1978). We will, therefore, not disturb this ruling.

Petitioners next cite as error the council's determination that the proposed units would be of a higher density than that allowed in the General Plan for an urban medium residential area. Although the precise language of the Plan is quoted in the findings, the following conclusions of the council lead us to believe that the council has either disregarded or misconstrued the language of the Plan.

"The General Plan provides in the General Plan map that the area in which the proposed development is to be located shall be 'urban medium density (3.0-6-0/acre)', meaning three to six units per acre. The proposed development is slightly over one acre and would contain eight residential units in four duplexes of two residential units each and would be

in excess of the General Plan's urban medium density of three to six units per acre.

"* * * * *

"The Council finds that the interests of neighboring property owners would be detrimentally affected by the construction of the proposed dwelling group since such would be out of character with the existing single-family residential area. Again, the General Plan with its *maximum authorization* of six units per acre would be violated by the proposed development which contains eight dwelling units per acre." (Emphasis supplied.)

■ ■ While, as we have stated above, we will defer to a council's reasonable interpretation of its comprehensive plan, we will not defer where, as here, there is a clear misreading of unambiguous language. *Damascus Comm. Church v. Clackamas Co., supra,* 32 Or App at 9. The general plan speaks in terms of an "average" number of units per acre; it does not set forth a maximum. That an absolute maximum is not intended is made clear by the very next sentence in the Plan which states that "this housing density will be exceeded in places * * *." Further, the subject lot measures approximately 47,998 square feet which would amount to approximately 6000 square feet for each of the eight units, a square footage well within the 5,000 to 12,000 square feet per unit recommended in the general plan.

■ The council prepared extensive findings based upon various policy statements in the general plan, most of which findings are unchallenged on appeal and appear to be supported by the record. However, insofar as the decision of the council was based upon its erroneous reading of the general plan, it is incorrect. Since we cannot tell whether the council would have made the same decision absent erroneous finding, we must remand for reconsideration.[2] *Civil Rights Div. v.*

---

[2] We do not rule out the possibility that the council might, from other language in the general plan, support a finding that more than six units on this plot of land are undesirable. We hold only that the decision may not be based on the erroneous finding that the plan calls for an absolute maximum of six units per acre.

[595]

*Williams,* 28 Or App 651, 656, 560 P2d 673 (1977), *affirmed* 280 Or 595, 573 P2d 270 (1978); *Stacey v. Board of Accountancy,* 26 Or App 541, 547, 553 P2d 1074, *rev den* (1976); *Palen v. State Bd. Higher Education,* 18 Or App 442, 463, 525 P2d 1047, *rev den* (1974).

If, on remand, the council should find that the petitioners' proposal is in accord with the general plan, it may still decline to grant the conditional use permit under its zoning ordinance if proper reasons are given.[3] We must, therefore, consider petitioners' contention that the council has misconstrued its zoning ordinance.

■ The single reference to the zoning ordinance in the findings, as set forth below, leads us to believe that the council indeed misunderstood its zoning ordinance.

> "The zoning ordinance, Ordinance No. 3810, implements the General Plan and said ordinance at Section 15.1 states that the purpose of the R-1 residential district is 'To encourage, accommodate, maintain and protect a suitable environment for family living. The R-1 district is intended to provide for *single-family residential homes* at urban standards in areas with community services.' In *Fasano v. Washington Co. Comm.,* the Oregon Supreme Court held 'The more drastic the change, the greater will be the burden of showing that it is in conformance with the comprehensive plan *as implemented by the ordinance,* that there is a public need for the kind of change in question, and that the need is best met by the proposal under consideration.' (Emphasis supplied.) In this instance, the proposal is found by the Council to be inconsistent with the General Plan, as implemented by the zoning ordinance in its Section

[3] Section 30-5-a of the Grants Pass zoning ordinance states:

"a. In order to grant any conditional use, the Planning Commission must find that the establishment, maintenance or operation of the use applied for will not, under the circumstances of the particular case, be detrimental to the health, safety or general welfare of persons residing or working in the neighborhood of such proposed use or be detrimental or injurious to the property and improvements in the neighborhood or to the general welfare of the City."

15.1, since such proposal *is not one for single-family homes*, and, based upon the testimony of the opponents, will encourage transient residents, which the Council finds does not encourage and protect a suitable environment for family living." (Emphasis supplied in original.)

It is not clear to what extent, if any, the council's decision was based upon the language of the zoning ordinance. However, what is stated about the zoning ordinance is incorrect in that it is nowhere noted that petitioners' proposal involves a conditional use under the ordinance. Further, the standard for granting a conditional use permit is not set forth as required by ORS 227.173(2) which states:

"(2) Approval or denial of a permit application shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth."

On remand the council should make clear whether the denial or granting of the permit is based on an inconsistency with the general plan other than that disallowed by our holding or on a decision not to allow the conditional use in this instance under the zoning ordinance. It should then be made clear which factual findings were relied upon in making the decision.

Reversed and remanded.