Argued and submitted June 24, affirmed August 31, 1983

ALLUIS et al,
*Respondents,*

*v.*

MARION COUNTY,
*Petitioner.*

(82-074; CA A27060)

668 P2d 1242

Robert C. Cannon, Marion County Legal Counsel, Salem, argued the cause and filed the brief for petitioner.

Donald M. Kelley, Silverton, argued the cause for respondents. With him on the brief was Kelley & Kelley, Silverton.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

### YOUNG, J.

Marion County seeks judicial review of a final order of the Land Use Board of Appeals (LUBA), that reversed a determination by the county that its comprehensive plan prohibits lot sizes smaller than 1.5 acres in "rural residential" areas. LUBA found the relevant language of the plan to be permissive and ruled that the implementing zoning ordinance, which sets a minimum lot size of one acre, controls. We affirm.

Respondents sought to partition their 2.03 acre parcel into two lots of 1.0 and 1.03 acres. The issue is whether the plan and the implementing ordinance are consistent or can be reconciled. The plan designates the property in question as "rural residential," and it is zoned "acreage residential" (AR) by the ordinance. The parcel is not within a planned development. The ordinance provides:

> "The maximum density for subdivisions and planned developments is 1.5 acres per dwelling. *The minimum lot size is 1 acre,* except in planned developments the minimum lot size shall not apply. *The recommended lot area standard is 1.5 to 3 acres.* When a density suffix has been applied to the AR zone, the maximum density and the minimum lot size shall conform to the density designation. In any case, parcels shall be large enough to provide a stable dwelling site free from flooding, with adequate water supply and waste water disposal facilities, that do not adversely affect adjacent property or the public." (Emphasis supplied.)

The county decided that the plan set a minimum lot size of 1.5 acres, rather than 1.0 acres as provided by the ordinance, and denied the partition. The plan states, in a general discussion of rural residential development:

> "* * * In this Plan, 1.5 acres per dwelling unit is *generally* considered as the maximum density. In areas that have development limitations, lower densities may be required to minimize the potential for adverse impacts of development on public health and the quality of the environment.
>
> "* * * * *
>
> "Because urban services, especially sewer and water, are very costly to provide to relatively low density rural developments, criteria will be applied to these areas to ensure that densities are low enough to avoid the need for these services. The majority of the lands designated for acreage homesites

have characteristics that will result in limitations to development. Some areas have steep slopes and poor soil characteristics that will require larger parcel sizes due to septic tank filter field limitations, the need for extra area for roadway and building site contouring, the need to incorporate unbuildable areas and scarcity of water supply. In addition, individual choices of open space needs may result in larger parcels. Because of these factors, rural residential development will occur on a range of parcel sizes. Unnecessarily large rural homesites generally do not provide for reasonably efficient utilization of the land. Therefore, in areas without environmental limitations the *optimum* lot size will be from 1.5 acres to 3 acres." (Emphasis supplied.)

Under the statement of "Rural Residential Policies," the plan provides:

"8.    Since there is a limited amount of land designated Rural Residential, efficient use of these areas shall be encouraged. The *overall* density of rural residential areas shall not be less than 1.5 acres per dwelling, allowing for a range of parcel sizes from 1.5 to 3 acres in size unless environmental limitations require a larger parcel." (Emphasis supplied.)

LUBA found these provisions in the plan to be "permissive" and that there was no conflict between the plan and the ordinance. That is, LUBA found the plan to state that the average density should not exceed one dwelling per 1.5 acres, but that individual lot sizes could be smaller.

■        Our review[1] begins with a recognition that this court will defer to a local body's interpretation of its own enactments, if the interpretation is reasonable. *Miller v. City Council of Grants Pass,* 39 Or App 589, 594, 592 P2d 1088 (1979); *Heilman v. City of Roseburg,* 39 Or App 71, 77, 591 P2d 390 (1979); *see Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978) (local interpretation entitled to "some weight"). *Miller v. City Council of Grants Pass, supra,* affords an example. The petitioners' proposal to build duplexes presented two opportunities to interpret the city's comprehensive plan. The plan provided:

"* * * Urban medium residential areas are intended to accommodate housing developments at an average of about 3

---

[1] Judicial review is governed by Or Laws 1979, ch 772, §§ 6(a), 7 and 8, as amended by Or Laws 1981, ch 748.

to 6 dwelling units per acre on lots ranging in size from 5,000 to 12,000 square feet. In some sections, such as southwest Grants Pass, this housing density will be exceeded by construction of duplexes on scattered individual lots."

The city denied the permits, finding in part that the intent of the plan was to have duplexes on scattered individual lots and not congregated in units of four duplexes, such as the proposed development. We said:

"* * * While it is not clear that the language is intended to mean that duplexes can only be built on individual lots, we have said that we will defer to a council's reasonable interpretation of its own comprehensive plan. We will, therefore, not disturb this ruling." 39 Or App at 594. (Citations omitted.)

As to the second issue, however, we found that the city erred in construing its plan as establishing a density limit of three to six units per acre. We said:

"While * * * we will defer to a council's reasonable interpretation of its comprehensive plan, we will not defer where, as here, there is a clear misreading of unambiguous language. * * * The general plan speaks in terms of an "average" number of units per acre; it does not set forth a maximum. That an absolute maximum is not intended is made clear by the very next sentence in the Plan which states that 'this housing density will be exceeded in places * * *.' * * *" 39 Or App at 595. (Citations omitted.)

We hold that Marion County erred in construing its plan as establishing a 1.5 acre minimum lot size in rural residential areas. Like the density average in *Miller,* the references in the plan to lot size refers to 1.5 acres as a "general" maximum density, as an "optimum lot size" and as an "overall" density minimum. Such general terms do not establish a required minimum lot size for each lot in a rural residential area, particularly when the ordinance clearly provides that the "minimum lot size is one acre."

It is particularly difficult to construe the plan as setting a stricter lot size standard than the ordinance when considered in context. The plan and the ordinance were approved the same day; they contain cross-references to each other.[2]

---

[2] The one-acre minimum lot size established by the ordinance remained unchanged from a prior zoning ordinance.

The ordinance declares a one acre minimum lot size and adds that the "recommended lot area standard" is 1.5 to 3 acres, the same "optimum" size mentioned in the plan. Similarly, the plan refers to the ordinance. The plan provides:

> "The predominant zoning category applied to the land within the Rural Residential area will be the Acreage Residential (AR) category. *The Acreage Residential category may be used with a numerical suffix (i.e., AR-3, AR-5, etc.) to indicate the minimum lot size* needed to protect the character and environmental stability of an area and the public health and safety." (Emphasis supplied.)

In its policy section, the plan repeats:

> "The Acreage Residential (AR) zone will be the predominant zone applied to the lands designated Rural Residential. *A numerical suffix may be used to indicate the minimum lot size allowed in the zone.*" (Emphasis supplied.)

The cross references indicate that the plan and the ordinance were each drafted in contemplation of the other and that no inadvertent conflict was made in the provision for minimum lot size. The plan clearly envisions that the minimum lot size standards will be established by the ordinance and will be signified by the numerical suffix attached to the letter symbol for the district (i.e., AR-3, AR-5). The plan itself does not attempt to establish more than an average or a recommended size. It cannot be said that the plan sets a conflicting standard which must prevail over the ordinance. *See* ORS 197.175(2)(d); *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975) (land use decisions and zoning must comply with the comprehensive plan). Accordingly, Marion County erred in denying the partition on the basis that the plan sets a minimum lot size of 1.5 acres per dwelling.

Affirmed.