Argued and submitted June 27, 1983, affirmed February 8, 1984

# KALMIOPSIS AUDUBON SOCIETY et al,
*Petitioners,*

*v.*

# DIVISION OF STATE LANDS et al,
*Respondents.*

(CA A26309)

676 P2d 885

Ellen Mendoza, Coos Bay, argued the cause and filed the brief for petitioners.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Petitioners seek judicial review pursuant to ORS 183.482 of an order of the Division of State Lands (Division) renewing a permit to remove gravel from a gravel bar on the north bank of the Rogue River. Petitioners assign a number of errors, some of which assert that the Division's action was inconsistent with statewide planning goals. Others involve the Division's alleged failure to comply with the Administrative Procedures Act.

Under ORS 183.482 this court has jurisdiction over appeals from contested case hearings. However, the Division's order for which review is sought comes within the definition of a land use decision, because the order is one with respect to which the agency is required to apply the goals. ORS 197.015(10); OAR 660-31-010, OAR 660-31-020(2), App to OAR 660-31-010. Under Or Laws 1979, ch 772, §§ 4-6, *as amended by* Or Laws 1981, ch 748, § 4(1) (hereafter referred to as the 1981 Act), exclusive jurisdiction to review any land use decision, including those of a state agency, lies with LUBA. Petitioners did not appeal the Division's order to LUBA, but they contend that this court may consider all of the errors assigned. The Division contends that we may not consider the errors that involve the application of the goals, but it appears to assume that we may consider the APA errors claimed. Neither party addresses the question whether we have jurisdiction at all, but we must do so. *City of Hermiston v. ERB*, 280 Or 291, 570 P2d 663 (1977); *Northern Ins. Co. v. Conn Organ*, 40 Or App 785, 596 P2d 605 (1979).

The question is whether LUBA has *exclusive* jurisdiction to review *all* of the claimed errors arising out of a *state agency's* final order if that order comes within the definition of a land use decision. The answer depends on whether the legislature, in enacting sections 4 through 6 of the 1981 Act, intended to divest this court of all jurisdiction to review state agency action that is only in part, a land use decision. Our review of the statutory language and the scant legislative history convinces us that the legislature did not intend to divest this court of its jurisdiction to review state agency action under ORS 183.482, except insofar as a claimed error in the agency action concerns the application of statewide planning goals.

Sections 4 through 6 of the 1981 Act originally enacted as Oregon Laws 1979, chapter 772, sections 4 through 6, describe the procedures LUBA is to follow and prescribes LUBA's scope of review. It is noteworthy that LUBA's procedure varies with the nature of the alleged error and that its scope of review varies with the status of the decision-making body whose decision is being reviewed. The scope of review depends on whether it is reviewing an order of a city, county or special district, on the one hand, or whether it is reviewing a state agency order.

Section 5[1] sets forth LUBA's review procedure. When the claim is that the decision violates the statewide goals,

---

[1] Or Laws 1979, ch 772, § 5 provided:

"(1)   Where a petition for review contains only allegations that a land use decision violates the state-wide planning goals, the board shall review the decision and proceed as provided in section 6 of this 1979 Act.

"(2)   Where a petition for review contains no allegations that a land use decision violates the state-wide planning goals, the board shall review the decision and prepare a final order affirming, reversing or remanding the decision.

"(3)   Where a petition for review contains both allegations that a land use decision violates the state-wide planning goals and other allegations of error, the board shall review the decision and proceed as provided in section 6 of this 1979 Act with respect to the allegations of violation of the state-wide planning goals, and prepare an order addressing all issues not related to the state-wide planning goals. The decision of the board concerning any issues not related to the state-wide planning goals shall be final, but no final order shall be issued until the commission has reviewed the recommendation of the board on the issues concerning the state-wide planning goals under section 6 of this 1979 Act and issued its determination. The board shall incorporate the determination of the commission into the final order to be issued under this subsection.

"(4)   The board shall reverse or remand the land use decision under review only if:

"(a)   The board finds that the city, county or special district governing body:

"(A)   Exceeded its jurisdiction;

"(B)   Failed to follow the procedure applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner;

"(C)   Made a decision that was not supported by substantial evidence in the whole record;

"(D)   Improperly construed the applicable law; or

"(E)   Made a decision that was unconstitutional; or

"(b)   After review in the manner provided in section 6 of this 1979 Act, the commission has determined that the city, county or special district governing body or state agency violated the state-wide planning goals.

"(5)   Final orders of the board may be appealed to the Court of Appeals in the manner provided in section 6a of this 1979 Act."

LUBA is required to submit a recommendation to the Land Conservation and Development Commission (LCDC) for its determination. When the issue involves only a claim of procedural irregularity, LUBA is to prepare a final order affirming or, in the case of a special district or local government, reversing or remanding the decision. When the appeal is based on violation of the goals *and* procedural irregularity, that portion of the appeal which involves the goals requires an LCDC determination, while the procedural aspects of the appeal are to be decided by LUBA.

Section 5 also sets out LUBA's scope of review, which varies with the status of the decision-making body. With respect to procedural irregularities by *local governments or special districts,* subsection (4) provides:

"The board shall *reverse or remand* the land use decision under review *only if:*

"(a) The board finds that the *local government* or *special district governing body:*

"(A) Exceeded its jurisdiction;

"(B) Failed to follow the procedure applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner.

"(C) Made a decision that was not supported by substantial evidence in the whole record;

"(D) Improperly construed the applicable law; or

"(E) Made a decision that was unconstitutional;

"* * * * *." (Emphasis supplied.)

■ However, its scope of review of land use decisions by *state agencies* is not so broad. Subsection (4) goes on to provide that

"The board shall *reverse or remand* the land use decision under review *only if:*

"* * * * *

"(b) After review in the manner provided in section 6, chapter 772, Oregon Laws 1979, the commission has determined that the local government or special district governing body or *state agency violated the goals.*" (Emphasis supplied.)

The plain language of subsection (4) indicates that LUBA may reverse or remand a *state agency's* land use decision *only* if LCDC determines that the decision violates the goals. It follows that, if the alleged error is procedural only, for example, that the agency failed to comply with the APA, LUBA is powerless to reverse or remand the agency's decision. We do not believe that the legislature would have given LUBA exclusive jurisdiction to review agency land use decisions for APA compliance without also giving LUBA authority to reverse or remand agency land use decisions that fail to comply with APA requirements. That would result in an appeal without a remedy.

That interpretation of subsection (4) is supported by the legislative history of Oregon Laws 1979, chapter 772. During the House Committee on Judiciary hearings regarding Senate Bill 435B, creating LUBA, the question arose whether a local government boundary commission's land use decisions would be subject to review by the proposed Land Use Board of Appeals. That question was triggered by this court's holding in *League of Women Voters v. Lane Co. Bndry Comm.,* 32 Or App 53, 573 P2d 1255 (1978), that a boundary commission is a state agency and that the sole avenue of appeal from a boundary commission's decision was to this court under ORS 183.480(2) and 183.482. In answer to that question, legislative counsel to the committee, the then Attorney General and an Assistant Attorney General testified to the effect that appeals concerned with a state agency's application of statewide planning goals would be reviewed by LUBA, but that *non-goal questions would continue to be heard by the Court of Appeals under the APA.* Minutes, House Committee on Judiciary, June 25, 1979, pp 20-21. It is clear that the legislature was aware of the problem and that, as the proposed legislation was explained to the Committee, LUBA would not have jurisdiction over claimed APA errors in an order of a state agency. We conclude, therefore, that the legislature did not intend to divest this court of jurisdiction over appeals taken pursuant to ORS 183.480 and 183.482 claiming APA violations, even when the agency decision comes within the definition of a land use decision.

Accordingly, we hold that an aggrieved party may appeal a state agency's action to this court pursuant to ORS 183.480 and 183.482, even though the agency action is a land

use decision. However, the aspects of a decision in "which the agency is required to apply the goals," ORS 197.015(10), are within the exclusive jurisdiction of LUBA and will not be reviewed in the first instance by this court.[2]

We may consider, then, the claimed errors under the APA, and we turn to the facts in this case. In 1981, the Division issued a removal permit to Rivers End Ranch, authorizing the removal of up to 100,000 cubic yards of gravel from the gravel bar at river mile two. The gravel bar is within the Rogue River estuary and is subject to tidal action. At about the same time as the Division permit was approved, Rivers End Ranch applied to the Curry County Planning Commission for a conditional use permit for the construction of an asphalt plant and a cement plant in connection with the gravel removal operation. The permit was approved by the planning commission and upheld on appeal by order of the County Board of Commissioners. The Kalmiopsis Audubon Society appealed that order to LUBA, which concluded that the order lacked sufficient findings to support compliance with the statewide planning goals, and remanded the case to the County in October, 1981. At the time of the present proceeding, the County had not cured the defects found by LUBA.

On January 27, 1982, the Division renewed the removal permit for Rivers End Ranch. Petitioners[3] requested, and were provided, a contested case hearing to challenge the permit. On September 3, the Division issued an order approving the permit. The Division found that

"there is significant biological importance of shallow gravel habitat, subtidal fine sediment deposits and areas of fringing wetland lying on and waterward of the periphery of the bar."

---

[2] In apparent recognition of the confusion in the statutory provisions involved here, the legislature enacted Oregon Laws 1983, chapter 827, section 30(2)(d) (ORS 197.825(2)(d)), which expressly provides that LUBA's jurisdiction over land use decisions by state agencies "does not include those land use decisions of a state agency over which the Court of Appeals has jurisdiction for initial judicial review under ORS 183.400, 183.482 or other statutory provisions." That law was not in effect when this appeal was filed.

[3] Catherine Kroger is a member of the Kalmiopsis Audubon Society and owns a residence on the south bank of the Rogue River. The removal operation is near her residence.

It quoted from a Department of Fish and Wildlife report the following finding:

> "The habitats at Mail Boat Point, the north slough, and the island dividing the river channel from the slough should be preserved. The shallow, protected waters of the slough are productive and should not be disturbed. The eddies and slack water areas around the bar are productive habitats for benthic organisms and the fish that feed on them."

As a result, the Division included in the permit certain restrictions designed to protect those interests, stating that the Department of Fish and Wildlife was satisfied "that if the conditions are followed the gravel removal operation will have a minimal impact to valuable fish and wildlife habitats near the site."

The Division also imposed conditions designed to insure that the gravel bar could recharge. The order stated that the Department of Land Conservation and Development had reviewed the proposed removal activity and had found it to be consistent with planning goals and with Oregon's Coastal Management Program. Although the Division noted that Rivers End Ranch had not obtained a final conditional use permit, the removal permit expressly required the ranch to secure necessary approvals under all zoning and other regulations before proceeding.

Tidewater Contractors, a construction firm, removes gravel under the removal permit under a contract with the Ranch. Most of the gravel is crushed for use in asphalt paving material and is sold to the Oregon State Highway Division and the United States Forest Service for road construction and maintenance. The Division found that Tidewater Contractors employs local citizens and contributes substantially to the economic base of southern Curry County. The permit expired on February 17, 1983.[4]

On appeal, petitioners' principal contention is that the Division is required to promulgate rules setting out criteria

---

[4] Although the removal permit has expired, the case is not moot, because the likelihood of the Division's renewal of the permit, the length of time necessary to obtain judicial review and the matters of public interest presented by some of the issues raised on appeal warrant a decision. *See, e.g., Perry v. Oregon Liquor Commission,* 180 Or 495, 498-99, 177 P2d 406 (1947); *Whipple v. OSAA,* 52 Or App 419, 421 n 3, 629 P2d 384, *rev den* 291 Or 504 (1981).

for determining when gravel removal permits will be approved, because the words used in ORS 541.625(1) are "delegative terms" under the analysis in *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980), requiring the Division to complete a legislative policy judgment.[5] Respondents assert that the words used in ORS 541.625 are "inexact terms," requiring agency interpretation of a completed legislative policy judgment. At the center of this dispute is the legislature's use of the words "best use" in ORS 541.625(1).

Because we consider the term "best use" to be a term of art, as used in the statutory scheme here involved, it is not necessary to decide how it might be classified under *Springfield* in other contexts.[6] ORS 541.625(1) provides:

> "The director *shall* issue a permit to remove material from the beds or banks of any waters of this state applied for under ORS 541.620 *if the director determines that the removal* described in the application *will not be inconsistent with* the protection, conservation and best use of the water resources of this state *as specified in ORS 541.610.*" (Emphasis supplied.)

On its face, ORS 541.625(1) requires the director to determine whether removal is inconsistent with the protection, conservation and best use of the water resource in question. If there is no finding of inconsistency,[7] the statute requires the director to issue the permit. Thus the initial question for the

---

[5] The Division contends that we should not consider this argument, because petitioners did not raise it below. In *Saxon v. Div. of State Lands,* 31 Or App 511, 514, 570 P2d 1197 (1977), we considered and decided an identical challenge to agency action on an application for a fill permit, despite the petitioner's failure to raise the issue at the hearing, because of the public importance of the issue. *See, generally, Marbet v. Portland Gen. Elect.,* 277 Or 447, 456, 561 P2d 154 (1977). The issue has the same importance here.

[6] It is not helpful for counsel simply to assert that a particular statutory term is, or is not, within a particular category and then proceed to draw the conclusions that follow from *Springfield.* A statutory term, like all language, gains meaning from the context in which it is used. Trying to determine whether the term "best use" is more like the term "good cause" than the term "dishonest conduct," without considering the contexts in which the terms appear, is a fruitless inquiry. We believe that careful reading of the relevant statutes resolves this case, because the issue before us is not whether this particular use of the water resource is its best use, but whether the Division must describe *the* best use of the resource prior to taking actions on individual permit applications.

[7] The parties have not raised, and we do not decide, when one use is "inconsistent" with another.

director is whether the requested removal would be inconsistent with the protection, conservation and best use of the water resource[8] *as specified in ORS 541.610.*[9]

ORS 541.610 is a general statement of legislative policy regarding the removal of material from water resources and the filling of those resources. ORS 541.610(1) lists the following uses of Oregon's water resources: domestic uses, agricultural uses, industrial uses, fish habitats and spawning grounds, transportation avenues, commercial sites and public recreation. Subsection (2) requires the director to take into account "all beneficial uses of water" when administering the fill and removal statutes. If removal is not inconsistent with the above uses, ORS 541.625(1) provides that removal shall be allowed.

■ After a contested case hearing on the permit in question, the Division found that granting the permit is not inconsistent with statewide planning goals, is not inconsistent with the protection, conservation and best use of the water and gravel resources in the area, is not inconsistent with the protection, conservation and best use of the fishery and other biological resources in the area, does not interfere with navigation, does not create hazards to the public health, safety or

---

[8] ORS 541.605(11) defines a water resource as

"* * * not only the water itself but also aquatic life and habitats therein and all other natural resources in and under the waters of this state."

[9] ORS 541.610 provides, in pertinent part:

"(1) The protection, conservation and best use of the water resources of this state are matters of the utmost public concern. Streams, lakes, bays, estuaries and other bodies of water in this state, including not only water and materials for domestic, agricultural and industrial use but also habitats and spawning areas for fish, avenues for transportation and sites for commerce and public recreation, are vital to the economy and well-being of this state and its people. Unregulated removal of material from the beds and banks of the waters of this state may create hazards to the health, safety and welfare of the people of this state. Unregulated filling in the waters of this state for any purpose, may result in interfering with or injuring public navigation, fishery and recreational uses of the waters. In order to provide for the best possible use of the water resources of this state, it is desirable to centralize authority in the Director of the Division of State Lands, and implement control of the removal of material from the beds and banks or filling of the waters of this state.

"(2) The Director of the Division of State Lands shall take into consideration all beneficial uses of water including streambank protection when administering fill and removal statutes."

welfare, and serves a public need. Those findings are supported by substantial evidence. Petitioners do not demonstrate why the record does not support the finding that the removal of gravel from this water resource is not inconsistent with *any* use of the water resource. Their basic position is that the Division has not articulated what is *the* best use of the resource in this instance.

■ The statutory scheme does not require the Division to determine what is *the* best use in a given instance.[10] It does require that the uses enumerated in ORS 541.610 be considered and that the Division find that the proposed removal is not inconsistent with any one or more of them, any combination of which might be the "best use." The Division did that here, and we conclude that it complied with the statute in issuing the permit.[11]

Petitioners also contend that they are aggrieved by the Division's failure to advise them of the possibility of appealing the decision to LUBA, because they lost their right to seek LUBA review of the goal questions as a result. ORS 183.470(4) provides that:

> "Every final order shall include a citation of the statutes under which the order may be appealed."

■ Respondents argue that the Division satisfied its statutory duty under ORS 183.470(4) by giving petitioner notice of its right to judicial review under the Administrative Procedures Act. That is probably what was intended at the time the statute was enacted but, given our conclusion that the agency order is subject to a bifurcated appeal, we think that the Division is required to advise parties of that possibility. In this case, however, the issue is moot because the

---

[10] In this regard, it differs markedly from the statutory language governing the approval of applications for *fill* permits. *See* ORS 541.625(2) *et seq;* OAR 141-85-205(6); *Saxon v. Div. of State Lands,* 31 Or App 511, 570 P2d 1197 (1977) (prior rule-making not required for considering fill permit applications).

[11] We repeat that, absent a finding of the inconsistency described in ORS 541.625(1), the statute requires the director to issue a removal permit. Although petitioners argue that the Public Trust Doctrine prohibits the gravel removal, "there is no grant here to a private party which results in such substantial impairment of the public interest as would be beyond the power of the legislature to authorize." *Morse v. Oregon Division of State Lands,* 285 Or 197, 203, 590 P2d 709, 712 (1979). The conditions on the removal operation here are designed to insure that the resource is not depleted and that the operation has minimal adverse effects.

permit has expired. *(See* n 4, *supra.)* Accordingly, we do not decide what consequences, if any, flow from the defective notice, except that it does not give this court jurisdiction over the goal questions.

■  Petitioners next argue that the Division violated its own regulations by failing to require the permit applicant to present proof of compliance with local land use plans and ordinances as required by OAR 141-85-205(1)(q).[12] The permit here was conditioned on the permittee's obtaining a letter of approval from the appropriate local governmental agencies prior to beginning removal operations. That condition substantially complies with the policy underlying the Division's rule.

Petitioners' remaining contentions relate to the Division's failure to address adequately state land use planning goals in deciding to issue the permit. Those questions are not properly before us.

Affirmed.

---

[12] OAR 141-85-205(1)(q) provides:

"Each applicant for a permit to fill or remove material from the bed or banks of the waters of this state shall file a written application with the Director [including] * * *. * * *

"* * * * *

"(q) A letter from the appropriate local government agency stating that the proposed project conforms with existing zoning, land use plans, and floor plain regulations. * * *"