No. 114 February 22, 2024 91

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE ex rel ELITEXTRX, LLC,
an Oregon limited liability company,
*Plaintiff-Appellant,*

*v.*

Scot SIEGEL,
Planning Director of Multnomah County,
and MULTNOMAH COUNTY,
*Defendants-Respondents.*

Multnomah County Circuit Court
22CV15736; A179527

Stephen K. Bushong, Judge.

Argued and submitted October 23, 2023.

Kevin J. Jacoby argued the cause for appellant. Also on the brief were Brittany Adikes and Green Light Law Group.

Katherine Thomas argued the cause for respondents. Also on the brief was Jenny M. Madkour.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

This is an appeal from a circuit court's dismissal of a mandamus action brought by plaintiff Elitextrx, LLC against the planning director for Multnomah County and Multnomah County (collectively, the county). The circuit court dismissed the action, agreeing with the county's position that, under ORS 475C.053, it was not yet required to issue the Land Use Compatibility Statement (LUCS) that plaintiff requested in connection with obtaining a license to relocate its marijuana production facility. Construing ORS 475C.053(2), we conclude that whether a land use is "outright permitted" or "conditional," as those terms are used in the statute, depends on whether the proposed use requires discretionary local permit approval "within the given zoning designation where the land is located." Here, the county zoning designation requires such discretionary approval and, thus, the county was not required to issue the LUCS before plaintiff obtained that discretionary approval. Accordingly, we affirm.

We start with a brief overview of the governing statutes and county ordinances. To obtain a marijuana production license from the Oregon Liquor and Cannabis Commission (OLCC), ORS 475C.065, an applicant must request a LUCS from the city or county that authorizes the land use, ORS 475C.053.[1] *See also, e.g.*, OAR 845-025-1090

---

[1] ORS 475C.053 was amended in 2023 after the circuit court's decision in this case. Or Laws 2023, ch 519, § 10. Because that amendment did not change any operative text in the statute, we cite to the current version. ORS 475C.053 provides, in full:

"(1) Prior to receiving a license under ORS 475C.065, 475C.085, 475C.093, 475C.097 or 475C.548, an applicant shall request a land use compatibility statement from the city or county that authorizes the land use. The land use compatibility statement must demonstrate that the requested license is for a land use that is allowable as a permitted or conditional use within the given zoning designation where the land is located. The Oregon Liquor and Cannabis Commission may not issue a license if the land use compatibility statement shows that the proposed land use is prohibited in the applicable zone.

"(2) Except as provided in subsection (3) of this section, a city or county that receives a request for a land use compatibility statement under this section must act on that request within 21 days of:

"(a) Receipt of the request, if the land use is allowable as an outright permitted use; or

"(b) Final local permit approval, if the land use is allowable as a conditional use.

(2)(a) (providing that OLCC "[m]ust receive a land use compatibility statement from the city or county that authorizes land use in the city or county in which the applicant's proposed premises is located prior to acting on an application ***"); OAR 845-025-1180(2)(b) (similarly requiring a LUCS for an application for a change of location "for the new proposed location from the city or county that authorizes land use for that location"). The LUCS "must demonstrate that the requested license is for a land use that is allowable as a permitted or conditional use within the given zoning designation where the land is located." ORS 475C.053(1). OLCC cannot issue a license if the LUCS "shows that the proposed land use is prohibited in the applicable zone." *Id*. The city or county is required to act on a request for a LUCS within 21 days of either "[r]eceipt of the request, if the land use is allowable as an outright permitted use," or "[f]inal local permit approval, if the land use is allowable as a conditional use." ORS 475C.053(2). It is that timing difference—within 21 days of the receipt of the request or after the final local permit approval—that forms the underlying dispute.

        In this case, the property at issue is in an exclusive farm use (EFU) zone in the jurisdiction of Multnomah County. Chapter 39 of the Multnomah County Code (MCC) is the Zoning Code of Multnomah County. MCC 39.1000. In that chapter, a "permitted use" is defined as "[a] use permitted in a base zone without the need for special administrative review and approval, upon satisfaction of the standards and requirements of this Chapter." MCC 39.2000 (defining "Permitted Use"). The MCC further provides that "Farm use, as defined in ORS 215.203" is an "allowed use" in an EFU zone "subject to all applicable supplementary regulations contained in MCC Chapter 39." MCC 39.4220(A). Under state law, marijuana is "[a] crop for the purposes of 'farm use' as defined in ORS 215.230" and "[a] crop for

_____

"(3) A city or county that receives a request for a land use compatibility statement under this section is not required to act on that request during the period that the commission discontinues licensing those premises pursuant to ORS 475C.950(4)(b).

"(4) A city or county action concerning a land use compatibility statement under this section is not a land use decision for purposes of ORS chapter 195, 196, 197, 197A, 215 or 227."

purposes of a 'farm' and 'farming practice,' both as defined in ORS 30.930." ORS 475C.489(1)(a), (b).

Under ORS 475C.449(2), a city or county can adopt "reasonable regulations" on the operation of marijuana businesses, including marijuana production.[2] Under that authority, the county has adopted regulations as part of its zoning code that apply to marijuana businesses. That section, MCC 39.8500 is included in the zoning code under Part 8.D., which is titled "Special Permits and Applications." MCC 39.8500(D) provides, in part:

> "A proposal for establishing, altering, expanding or replacing a Marijuana Business will be reviewed as specified in Table A below and is subject to the specified criteria therein as well as the criteria set forth in paragraph E of this section. *** Where no review process for a particular Marijuana Business in a particular base zone is specified in Table A, the Marijuana Business may not operate in that base zone."

Where the proposed use is for outdoor marijuana production in an EFU zone, the proposal must comply with MCC 39.4220(A) (allowing "farm use", subject to all applicable supplemental regulations in MCC chapter 39), and MCC 39.8500(E), which includes additional requirements related to siting relative to schools; setbacks for buildings and structures; limitations and required equipment related to noise, light, and barriers; and limiting a lot of record to only one of each of the listed types of marijuana businesses.

With that legal background in mind, we briefly relate the undisputed factual and procedural history of this case. Plaintiff, who owns and operates a licensed recreational marijuana production facility in Portland, planned to relocate its facility to property located within the planning jurisdiction of Multnomah County on property zoned EFU. In September 2021, plaintiff submitted an application to the county for a LUCS, as required by ORS 475C.053.

---

[2] As relevant to marijuana production, "reasonable regulations" include, "[r]easonable conditions on the manner in which a marijuana producer *** may produce marijuana"; "[r]easonable limitations on the hours during which [the business] may operate"; "[r]easonable requirements related to the public's access to [the business's] premises ***"; and "[r]easonable limitations on where [the business's] premises *** may be located." ORS 475C.449(1)(a), (e), (f), (g).

The county issued a LUCS that checked the box on the form providing that plaintiff's proposed use "is prohibited." The county also included comments in the LUCS that provided:

> "MCC 39.4215 Uses specifies that no building, structure or land shall be used unless the use will occur on a Lot of Record. At present, no final land use decision has been made that tax lot 2N1W21-01100 is a Lot of Record.

> "The applicant, Elitextrx, LLC has not obtained approval of a Marijuana Business Registration from Multnomah County Land Use Planning. The [c]ounty's ordinance is to protect and preserve the public health, safety and general welfare of the community by establishing restrictions on the siting and operation of Marijuana Businesses. [MCC 39.8500]"

(Brackets in original.)

Plaintiff then filed a petition for writ of review with the circuit court. The court issued a writ, and the county in response filed a motion seeking an order from the court to withdraw the LUCS and revise it to comply with *Scott, Inc. v. City of Ontario*, 316 Or App 633, 503 P3d 502 (2021). The court granted the county's motion in part, directing the county to withdraw the LUCS and consider the application anew using the effective date of the withdrawal as the date the county received the LUCS application. The court further directed the county to comply with ORS 475C.053 and *Scott*. Finally, the court noted that it "has not decided the issue of whether the request for a [LUCS] should be processed under ORS 475C.053(2)(a) or (b)."

Effective March 31, 2022, the county withdrew the LUCS. On May 12, 2022, plaintiff filed a petition for an alternative writ of mandamus, requesting that the circuit court direct the county to issue a LUCS because the proposed use is "outright permitted" and not a "conditional use." The court issued the alternative writ. The county responded and filed a motion to dismiss, arguing that plaintiff's proposed use was not "outright permitted," which would be processed under ORS 475C.053(2)(a). Instead, the county asserted that the proposed use was subject to conditions that require local permit approval that plaintiff had not yet obtained, which is processed under ORS 475C.053(2)(b), and thus the county

was not yet required to issue the LUCS. After briefing and argument, the court granted the county's motion to dismiss concluding that the LUCS was required under the timelines set out in ORS 475C.053(2)(b) because it was not an outright permitted use within the meaning of the statute.

On appeal from the resulting judgment, plaintiff asserts that this is a case of statutory construction. Specifically, plaintiff requests that we construe what "outright permitted use" and "conditional use" mean as used in ORS 475C.053(2). Based on the text and context of the statute, plaintiff asserts that whether a use is "outright permitted" or "conditional" is determined by the base zone where the property is located. Because plaintiff's proposed use—marijuana production—is a "farm use" that is listed as an "allowed" use in the county's EFU zone, plaintiff contends that the use is "outright permitted" and, thus, the county had to issue a LUCS within 21 days of March 31, 2022.

The county responds that a land use "is 'outright permitted' for purposes of ORS 475C.053(2)(a) only if it is allowed without conditions, whereas a use is 'conditional' for purposes of ORS 475C.053(2)(b) if it is allowed subject to conditions met through final local permit approval." The county asserts that the plain text of ORS 475C.053(2) creates a dichotomy between uses that do and do not require local permit approval and links the timing of the issuance of the LUCS to a time when the local government knows whether the proposed use is prohibited or allowable in the zone. The county further argues that the statutory context and legislative history supports its reading of ORS 475C.053. The county also contends that plaintiff's proposed use is not "outright permitted" because it is subject to conditions in the county zoning code that plaintiff must meet through local permit approval.

As framed by the parties' arguments, we must construe ORS 475C.053(2), focusing on what "outright permitted use" and "conditional use" mean as those terms are used in the LUCS statutory framework. As with any statutory interpretation question, we seek to determine the intent of the legislature by applying our usual methodology of examining the statutory text, in context, along with any

legislative history that is helpful to our analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

We start with the text of ORS 475C.053(1), because it sets out the purpose of the LUCS, *viz.*, to inform OLCC whether the requested license "is for a land use that is allowable as a permitted or conditional use within the given zoning designation where the land is located." ORS 475C.053(1). If the land use "is prohibited in the applicable zone," OLCC may not issue the requested license. *Id.* Thus, under that section, land uses fall into either the "allowable" or "prohibited" category, and within the allowable category, the land use is either "permitted" or "conditional."

The statute then sets out the timing for a city or county to issue a requested LUCS:

"(2)   Except as provided in subsection (3) of this section, a city or county that receives a request for a land use compatibility statement under this section must act on that request within 21 days of:

"(a)   Receipt of the request, if the land use is allowable as an outright permitted use; or

"(b)   Final local permit approval, if the land use is allowable as a conditional use."

ORS 475C.053(2).[3] Paragraph (2) echoes the text from paragraph (1) by providing two tracks for the issuance of the LUCS for an allowable use, depending on if the allowable use is "outright permitted" or "conditional." However, ORS 475C.053(2)(b) also gives further context as to what the legislature intended by its use of the term "conditional," by indicating it is a use that requires "local permit approval."

The terms "outright permitted" or "conditional" are not defined within ORS chapter 475C. In the land use context, however, we are not operating from a blank slate, particularly when those terms are used in the two-category fashion. We must presume that the legislature knew what it was doing

---

[3]  We note that ORS 475C.053 does not explicitly provide when a city or county is required to issue the LUCS if the proposed use is prohibited or if the city or county ultimately does not grant final local permit approval.

when it used those terms in the manner that it did in the land use context. *See Marshall v. PricewaterhouseCoopers, LLP*, 371 Or 536, 541, 539 P3d 766 (2023) (explaining that "if the context or legislative history of a statute indicate that the legislature intended a term to have a meaning 'drawn from a specialized trade or field,' so-called 'terms of art,' we consider 'the meaning and usage of those terms in the discipline from which the legislature borrowed them'" (quoting *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014))). Those terms historically have been used in Oregon land use to distinguish between two types of allowed uses. An outright permitted use is one that can be done "without seeking or obtaining any further discretionary permission from planning or zoning officials," whereas a "conditional use" is one that cannot be made without obtaining a permit based on a discretionary decision. *Anderson v. Peden*, 30 Or App 1063, 1068, 569 P2d 633 (1977), *aff'd*, 284 Or 313, 587 P2d 59 (1978); *see also, e.g.*, *Brentmar v. Jackson County*, 321 Or 481, 496, 900 P2d 1030 (1995) (discussing the legislative history of ORS 215.213 and its origins of dividing allowed uses into two categories—those permitted "as of right" or "uses that a local governing body could not prevent" and those that are conditional or "uses that were 'subject to approval of the governing body of the county'"). The usage of those terms by the legislature here does not suggest that the legislature intended something different than that well-understood meaning.[4]

 In construing those terms, we reject plaintiff's suggestion that a "conditional use" can only be one that requires a "conditional use permit." A conditional use without further explication is not so narrow. Although it could require a "conditional use permit," it can also encompass uses that require some other form of local discretionary review. That interpretation is confirmed by the words used by the legislature.

---

 [4] We note that the technical meaning of those terms does not differ substantively from the common usage of those terms as reflected in the relevant dictionary definitions. Rather, the technical meaning ties those common understandings to the specific processes that make up land-use decisions. *See Webster's Third New Int'l Dictionary* 1683 (unabridged ed 2002) ("permit" as a verb means "to consent to expressly or formally : grant leave for or the privilege of : ALLOW, TOLERATE"); *id.* at 1603 ("outright" as an adjective means "going or carried to the full extent : not limited or qualified" or "given without reservation"); *id.* at 473 ("conditional" as an adjective means "containing, implying, subject to, or depending on a condition").

The legislature did not use the term "conditional use permit" in ORS 475C.053. Instead, it referred to a "local permit approval" being required for a conditional use in the context of ORS 475C.053. Additionally, the legislature used the term "conditional use" deliberately to encompass all "allowable" uses that are not "outright permitted," which conceptually includes a broader category of uses than one requiring a "conditional use permit." *Cf. Anderson v. Peden*, 284 Or 313, 316, 587 P2d 59 (1978); *Auckland v. Bd. of Comm. Mult. Co.*, 21 Or App 596, 601, 536 P2d 444 (1975).[5] We thus reject plaintiff's contention that a "conditional use," as used in ORS 475C.053, is one that requires a "conditional use permit."[6] If we were to read the statute as plaintiff's argument suggests, it would leave out allowable uses that are neither "outright permitted" nor require a "conditional use permit." We agree with the county's assertion that, using the words that it did, the legislature deliberately created a dichotomy

---

[5] The Supreme Court aptly pointed out in *Anderson* that, standing alone, the term conditional use tells us little:

"Standing alone, the term 'conditional use' can convey quite different meanings. It could mean that the specified use is a permitted use whenever certain conditions exist or are satisfied. Or, second, it may mean that the use will be permitted subject to special conditions attached to the individual permit. Third, 'conditional use' historically has often been employed simply as a device to permit discretionary decisions on certain uses, without much attention to the meaning of 'conditional.' *** Rather than assuming that the term is a known word of art, it would be helpful if draftsmen would spell out what 'conditions' are meant[.]"

284 Or at 316.

In *Auckland*, this court observed that a use that requires discretionary governmental approval are quasi-judicial decisions, regardless of the label used:

"Whenever one seeks to use property in a manner that is not an outright permitted use, and must therefore obtain governmental approval, the necessary governmental proceedings are quasi-judicial in nature within the meaning of *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973). This is true whether the other-than-permitted-use is sought by way of a zone change, comprehensive plan change, conditional use permit, variance, or as in this case, 'a reclassification.' The labels are not controlling. Instead, *Fasano* is applicable when land-use decisions affect specific individuals and involve application of general rules to individual interests. 264 Or at 579-81."

21 Or App at 601 (footnote omitted).

[6] We also reject plaintiff's assertion that we said in *Scott* that "conditional use" was only in reference to when a "conditional use permit" is required. We did not make any such holding in *Scott*; rather, we merely recognized that, under the facts of that case, the plaintiff was required to obtain a conditional use permit because the proposed use required one in the designated zone. 316 Or App at 637.

of allowable uses, *viz.*, those that are "outright permitted" and those that are "conditional."

Further, taking into account that a conditional use under ORS 475C.053(2) is one that requires "local permit approval," there is further contextual guidance in the zoning statutes of the legislature's likely intent. Although the legislature has not made the definition of "permit" in the zoning statutes apply directly to ORS 475C.053, that definition provides context as to what the legislature likely intended with the term "local permit approval," because the definition of "permit" does otherwise apply to a county's approval of a proposed land use. In ORS 215.402(4), "permit" is defined as "discretionary approval of a proposed development of land under ORS 215.010 to 215.311, 215.317, 215.327 and 215.402 to 215.438 and 215.700 to 215.780 or county legislation or regulation adopted pursuant thereto."[7] *See also* ORS 227.160(2) (using the same definition as applied to cities, except referring to the statutes that apply to cities).

Our interpretation is further supported by the statutory context in ORS 475C.449, which was adopted at the same time as ORS 475C.053, and, as set out above, allows local governments to adopt reasonable regulations that apply to marijuana business, including specifically reasonable regulations on the location of such businesses. *See* ORS 475C.449(1)(g) ("'[R]easonable regulations' includes * * * [r]easonable limitations on where a premises for which a license or certificate may be issued under ORS 475C.005 to 475C.525 may be located."). The legislature expressly allows

---

[7] The definition of "permit" further provides that "'[p]ermit' does not include:

"(a) A limited land use decision as defined in ORS 197.015;

"(b) A decision which determines the appropriate zoning classification for a particular use by applying criteria or performance standards defining the uses permitted within the zone, and the determination applies only to land within an urban growth boundary;

"(c) A decision which determines final engineering design, construction, operation, maintenance, repair or preservation of a transportation facility which is otherwise authorized by and consistent with the comprehensive plan and land use regulations; or

"(d) An expedited land division, as described in ORS 197.360."

ORS 215.402(4). Under ORS 197.015(12), a "limited land use decision" is a decision on matters not at issue in this case with respect to sites within an urban growth boundary.

local governments to apply those regulations to marijuana production, which is an allowed "farm use," and provides that those regulations can be imposed notwithstanding the statutes that otherwise restrict a local government's ability to regulate farm use in an EFU zone. ORS 475C.449(2) ("Notwithstanding ORS 30.935, 215.253(1) or 633.738, the governing body of a city or county may adopt ordinances that impose reasonable regulations * * *"). The existence of that statute indicates that the legislature contemplated that local governments would be able to impose those regulations through local permit approval, including on marijuana production in EFU zones.

From the foregoing text, in context, we conclude that whether a use is outright permitted or conditional, as provided in ORS 475C.053, depends on whether the proposed use requires discretionary local permit approval "within the given zoning designation where the land is located." *See also Scott*, 316 Or App at 638-39 (emphasizing that the purpose of a LUCS under ORS 475C.053 is to inform OLCC whether the use is allowable "within the given zoning designation where the land use is located").

After reviewing the legislative history for ORS 475C.053, we conclude that, although it provides little help in discerning the legislature's intent on the issue here, it does not suggest that the legislature intended something different from what we have discerned from the text and context. The legislature enacted ORS 475C.053 as part of House Bill 3400 (2015), which was a comprehensive bill that enacted, added to, and amended Ballot Measure 91 that had just been adopted by the voters in the 2014 general election. Or Laws 2015, ch 1; Or Laws 2015, ch 614, § 34(4). As originally drafted, HB 3400 did not include a section similar to ORS 475C.053. That section was added to HB 3400, along with many other additions and amendments to the bill, with the -1 amendments. HB 3400 (2015), -1 amendments (May 18, 2015). The -1 amendments added a section, which provided:

> "Prior to the issuance of any license under section 19, 20, 21 or 22, chapter 1, Oregon Laws 2015, the Oregon Liquor Control Commission [now known as the Oregon

Liquor and Cannabis Commission] shall request a land use compatibility statement from the city or county that authorizes the land use. The land use compatibility statement must demonstrate that the requested license is for a land use that is allowable as a permitted or conditional use within the given zoning designation where the land is located. The commission may not issue a license if the land use compatibility statement shows that the proposed land use is prohibited in the applicable zone."

*Id*. § 35(5).

There was limited public discussion or testimony related to the land use section of the -1 amendments that are at issue in this case. MaryAnne Nash of the Oregon Farm Bureau touched on the land use section more generally, testifying that in EFU zones there are outright permitted uses and conditional uses that require local governing body review and expressing concern that it was not clear from the bill when a county can impose land use conditions. Video Recording, Joint Committee on Implementing Measure 91, HB 3400, May 20, 2015, at 4:35 (statement of MaryAnne Nash), https://olis.oregonlegislature.gov (accessed Feb 13, 2024). The only discussion of the LUCS section came from Katherine Daniels from the Department of Land Conservation and Development (DLCD). Daniels briefly expressed the concern that the section required the LUCS only to show when the proposed use was allowable and would not inform OLCC if the use would be approved. She testified that it would be preferrable if the LUCS addressed whether the proposed use was approved, because otherwise an applicant could spend time and money to get a license from OLCC and not end up with land use approval. Video Recording, Joint Committee on Implementing Measure 91, HB 3400, May 27, 2015, at 28:45 (statement of Katherine Daniels, DLCD), https://olis.oregonlegislature.gov (accessed Feb 13, 2024). As part of several suggested changes to HB 3400, DLCD suggested that the LUCS provision be amended to provide that the LUCS "must demonstrate that the requested license is for a land use that **has been approved** within the given zoning designation where the land is located" and that OLCC could not issue a license where the land use "**has not been approved** in the applicable zone."

Testimony, Joint Committee on Implementing Measure 91, HB 3400, May 27, 2015, Ex 3 (statement of Michael Morrissey and Katherine Daniels, DLCD) (boldface in original).

Later, in the -9 amendments—which again contained many revisions to the overall bill—the LUCS provision in HB 3400 was amended to add the language that became ORS 475C.053(2). HB 3400 (2015), -9 amendments, (June 8, 2015). There was no discussion at any public hearings on the amendment to the LUCS provision.

From that scant legislative history, we take away two observations. First, there was a general understanding that there are two categories of allowable uses in EFU zones—those that are permitted outright and those that are conditional. Second, although there was no public discussion, the fact of the -9 amendment to the LUCS section suggests that the legislature was responding to the DLCD concern that the OLCC could issue a license based on the LUCS demonstrating the use was allowable, even though the land use might not be approved by the local government. Those two observations comport with our construction of the statute, discussed above, which focuses on the text and context.

Having properly construed ORS 475C.053, we turn to what the county code requires with respect to plaintiff's proposed use and whether the county is required to issue the LUCS because it is an outright permitted use.

Plaintiff asserts that its proposed use is an outright permitted use under the county code because the code provides that "farm use" is an "allowed" use in the EFU zone, MCC 39.4220(A), and that marijuana production in an EFU zone is reviewed as a farm use, MCC 39.8500(D), Table A. Plaintiff argues that its proposed use is not a conditional use under the county code because MCC 39.4230 sets forth a list of "conditional uses" in the EFU zone and marijuana production is not listed there. Plaintiff also points to the county's comprehensive plan, which provides that each zoning district "specify what uses are allowed outright or conditionally in each zone" and, thus, surmises that "allowed" uses in the EFU zone must be those that are "allowed outright."

The county remonstrates that state law allows it to regulate marijuana production in its EFU zone, ORS 475C.449, and that it has done so through MCC 39.8500(D) and (E). The county further asserts that, because plaintiff's proposed use is subject to the conditions in MCC 39.8500 that must be met through the local permit approval process under MCC 39.1105, the use is not an outright permitted use. We agree with the county's arguments.

Plaintiff's proposed use of outdoor marijuana production in an EFU zone is not an outright permitted use "within the given zoning designation where the land is located," ORS 475C.053(1), because it is a use that requires discretionary local permit approval under the county's zoning designation. Although "farm use" is an allowed use in the EFU zone and would not ordinarily require a discretionary permit approval, plaintiff's proposed farm use requires discretionary approval as provided in MCC 39.1105.

The county's zoning code defines "permitted use" as "[a] use permitted in a base zone without the need for special administrative review and approval, upon satisfaction of the standards and requirements of this Chapter." MCC 39.2000 (defining "Permitted Use"). However, the marijuana business regulations appear in part 8.D. of the code, which is titled "Special Permits and Applications," indicating that a special administrative review applies. Under MCC 39.8500(D), Table A, marijuana production in an EFU zone is subject to MCC 39.4220(A) and is also subject to MCC 39.8500(E). MCC 39.4220(A) also provides that "[f]arm use, as defined in ORS 215.203" is an "allowed use" in the EFU zone "subject to all applicable supplementary regulations contained in MCC Chapter 39." Farm use for outdoor marijuana production is subject to supplementary regulations, under MCC 39.8500(E), which are the type of regulations that require discretionary review for approval, based on the descriptions of those types of decision in MCC 39.1105.[8]

___

[8] We note that MCC 39.8500(E) regulations appear to require a Type II decision under MCC 39.1105 based on the descriptions in the code of what a Type II decision covers. We need not address that issue, however, because it is not raised in this appeal. Although plaintiff argued before the circuit court and on appeal that the county did not demonstrate that a permit was required for its proposed land use, plaintiff has not addressed this issue, having focused solely on farm use being listed as an "allowed use" and that MCC 39.8500(E) does not explicitly

Because plaintiff's proposed use requires discretionary local approval within the given zoning designation for the land use, it is not an outright permitted use as that term is used in ORS 475C.053(2), and, as a result, the county was not required to issue a LUCS to plaintiff within 21 days of March 31, 2022. Thus, for the foregoing reasons, the circuit court did not err in dismissing plaintiff's alternative writ of mandamus.

Affirmed.

---

provide that a permit is required. As explained above, we reject plaintiff's arguments on those points.